12

1  MICHAEL R. TENER (CA SBN: 253790)
2  MELISSA BOCANEGRA (CA SBN: 318282)
   NEUMILLER & BEARDSLEE
3  A PROFESSIONAL CORPORATION
   509 W. Weber Avenue, 5th Floor
4  P.O. Box 20
5  Stockton, CA  95201-3020
   Telephone:  (209) 948-8200
6  Facsimile:  (209) 948-4910
7  E-mail: mtener@neumiller.com

8  Attorneys for Plaintiff,
   CRAIG DE JONG
9

10                UNITED STATES BANKRUPTCY COURT

11               EASTERN DISTRICT OF CALIFORNIA

12                      MODESTO DIVISION

13  In re                          )  Case No. 18-90339
                                   )
14                                 )
    KIMBERLY ROSE SOLARIO,         )  Adv. Pro. No.
15                                 )
                                   )
16        Debtor.                  )  DC No. NEU-1
                                   )
17  _____)
                                   )  Chapter 7
18  CRAIG DE JONG,                 )
                                   )
19        Plaintiff,               )  **COMPLAINT TO DETERMINE**
                                   )  **DISCHARGEABILITY OF DEBT**
20        vs.                      )  [11 U.S.C. §§ 523(a)(2), 523(a)(4),
                                   )  523(a)(6)]
21                                 )
    KIMBERLY ROSE SOLARIO,         )
22                                 )  Judge: Hon. Ronald H. Sargis
                                   )
23        Defendant.               )
                                   )
24  _____)

25  / / /
26  / / /
27  / / /
28  / / /

Plaintiff CRAIG DE JONG ("Mr. De Jong"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1.      Mr. De Jong brings this adversary proceeding to determine that debts owed to Mr. De Jong by Debtor KIMBERLY ROSE SOLARIO ("Ms. Solario") are nondischargeable and, additionally or alternatively, to object to Ms. Solario's discharge. This Court has jurisdiction over this adversary proceeding pursuant to, *inter alia*, 11 U.S.C., section 523(2)(A), (4), and (6); 28 U.S.C., section 157(b)(1), (2)(I), and (O); and 28 U.S.C., section 1334.

2.      This adversary proceeding is brought pursuant to Federal Rules of Bankruptcy Procedure, rules 4007 and 7001 *et seq.*

3.      Venue in this Court is proper pursuant to Title 28, section 1409 of the United States Code as this adversary proceeding arises under and in connection with a case under the Bankruptcy Code that is pending in this District.

4.      This is a core proceeding under 28 U.S.C., section 157(b)(2)(A), (I), and (O).

5.      Mr. De Jong consents to entry of final orders or judgments by this Court.

## THE PARTIES

6.      Mr. De Jong, the plaintiff in this adversary proceeding, is an individual and resident of Ripon, San Joaquin County, California, and is a creditor of Ms. Solario.

7.      Ms. Solario, the debtor in this case and the defendant in this adversary proceeding, is an individual. Mr. De Jong is informed and believes, and thereupon alleges, that Ms. Solario is a resident of Modesto, Stanislaus County, California.

## PROCEDURAL BACKGROUND

8.      This adversary proceeding does not reach this Court in a vacuum. On August 15, 2014, Mr. De Jong filed a complaint against Ms. Solario and four other defendants—George Beach, Susan Beach, Nicola Bellino (Ms. Solario's father) and Judith Bellino (Ms. Solario's mother)—in the Superior Court of California, County of San Joaquin. That case was styled *De Jong v. Beach et al.* and was originally assigned case number 39-2014-00314863-CU-OR-STK. That case number was later re-designated as STK-CV-URP-2014-0008188.

/ / /

1213279-2        Complaint to Determine Dischargeability of Debt

1        9.    That case was thoroughly litigated in state court for nearly three weeks in two phases.

2  On March 29, 2017, the Superior Court entered an "Interlocutory Judgment and Order" in favor of

3  Mr. De Jong and against Ms. Solario and her co-defendants. That judgment found Mr. De Jong to be

4  the owner of certain real property located at 484 S. Manley Road, Ripon, California (the "Ripon

5  Property"), which the Superior Court found had been purchased by Ms. Solario with money that she

6  had misappropriated from Mr. De Jong. The interlocutory judgment also awarded damages to Mr.

7  De Jong against Ms. Solario and her co-defendants jointly and severally in the amount of

8  $460,663.03 and set a further hearing date for the determination of the amount of punitive damages

9  that would be awarded against Ms. Solario. The Superior Court also ordered Ms. Solario to turn the

10  Ripon Property over to Mr. De Jong and to insure and pay all property taxes on the property until she

11  did so.

12        10.    Ms. Solario filed a notice of appeal of that Interlocutory Judgment and Order on May

13  3, 2017, but abandoned that appeal on June 15, 2017.

14        11.    On July 17, 2017, the Superior Court issued an order in the *Beach* case granting Mr.

15  De Jong's motion under California Code of Civil Procedure section 2033.420 for an award of his

16  reasonable expenses, including attorney's fees and costs, of proving true facts that Ms. Solario failed

17  to admit in response to requests for admission that Mr. De Jong had propounded upon her. The

18  Superior Court ordered Ms. Solario to pay Mr. De Jong the sum of $183,182.00 to reimburse

19  expenses he had reasonably incurred in proving his claims against Ms. Solario. The Superior Court

20  made separate awards of fees and costs in favor of Mr. De Jong against Ms. Solario's co-defendants

21  and imposed a cap of $189,532.50 on the total award as to all of those cross-defendants.

22        12.    On February 14, 2018, following the punitive damages phase of trial in the *Beach*

23  case, the Superior Court issued a final judgment against Ms. Solario and her co-defendants. That

24  judgment included an award of damages in the amount of $460,663.03 jointly-and-severally against

25  Ms. Solario and her co-defendants plus prejudgment interest at seven percent (7%) from July 28,

26  2014, less a credit of $359,000.00 credited as of May 30, 2017 for the turnover of the Ripon Property

27  to Mr. De Jong. The Superior Court also imposed punitive damages against each of the co-

28  ///

1213279-2    Complaint to Determine Dischargeability of Debt

1  defendants individually.  As to Ms. Solario, the Superior Court awarded Mr. De Jong punitive

2  damages in the amount of $20,000.00.

3      13.    Ms. Solario appealed the costs of making proof award to the California Court of

4  Appeal for the Third Appellate District on September 18, 2017, and appealed the final judgment to

5  that appellate court on April 13, 2018.  Those appeals remain pending as of the filing of this

6  complaint.

7      14.    On July 19, 2018, Mr. De Jong timely filed the following proofs of claim, with all

8  amounts stated or estimated as of the petition date:

9          a.    Claim No. 2-1, for $7,991.70, for property taxes on the Ripon Property that

10  Ms. Solario had been ordered to pay under the Interlocutory Judgment and Order;

11          b.    Claim No. 3-1, for $254,486.65, on the final judgment; and

12          c.    Claim No. 4-1, for $197,987.12, on the expenses of making proof order.

13      15.    As of the date of this complaint, Ms. Solario has not paid any of the foregoing

14  amounts, except that on July 31, 2014, Ms. Solario issued a check to Mr. De Jong in the amount of

15  $25,000.00 that Mr. De Jong subsequently deposited.  The judgment does not state whether that

16  amount is to be applied to any of the aforementioned debts.

17                              **GENERAL ALLEGATIONS**

18      16.    In or around December of 2008, Mr. De Jong moved into the residence located at

19  21335 E. River Road, Escalon, California ("the Escalon Property") with his then-girlfriend, Ms.

20  Solario.  Ms. Solario's mother, Judith Bellino ("Mrs. Bellino"), owned the Escalon Property at that

21  time.  Mr. De Jong learned that Mrs. Bellino intended to sell the Escalon Property and entered into a

22  contract to purchase it from her himself in a short sale for $345,000.  However, Mrs. Bellino's

23  lenders would not approve a short sale at that amount, and ultimately approved the sale at a price of

24  approximately $425,000.00.

25      17.    To come up with the money, Mr. De Jong sought personal loans from friends.  He

26  borrowed $275,000.00 from an individual named Robert Steves and $75,000.00 from an individual

27  named Patricia Gilliland.  An additional $85,000.00 came from George and Susan Beach, who

28  / / /

1213279-2            Complaint to Determine Dischargeability of Debt

1  agreed to be come co-purchasers with Mr. De Jong and who signed on to the same purchase

2  agreement that Mr. De Jong had signed with Mrs. Bellino.

3       18.    Mr. De Jong and the Beaches were originally going to be on title together as co-

4  owners. However, shortly before the closing, Mr. De Jong elected not to have his name appear on

5  title. Through Ms. Solario's parents, Mr. De Jong is informed and believes and thereupon alleges

6  that the Beaches agreed to "step up" and hold title for his benefit. Mr. De Jong and the Beaches

7  signed an addendum to the purchase agreement removing Mr. De Jong's name from title. Instead of

8  the Beaches contributing $85,000.00 to Mr. De Jong, Mr. De Jong contributed $340,500.00 to the

9  purchase of the Escalon Property by cashier's check made payable to George Beach. Mr. Beach

10  subsequently acknowledged that he knew he was holding title partly for Craig De Jong's benefit.

11       19.    Mr. De Jong continued to occupy the Escalon Property with Ms. Solario until

12  February or March of 2011, when they split up. Mr. De Jong moved out and advised Ms. Solario

13  that she could continue to live in the Escalon Property until after the "holidays," at which time he

14  intended to sell the property.

15       20.    Mr. De Jong is informed and believes, and thereupon alleges, that without his

16  knowledge, Ms. Solario met and conspired with the Beaches and her parents to convey the Escalon

17  Property to her. Mr. De Jong is further informed and believes, and thereupon alleges, that pursuant

18  to that agreement the Bellinos gave $100,000.00 to Ms. Solario, of which she paid $94,438.38 to the

19  Beaches (ostensibly paying them back their $85,000.00 contribution with interest). The Beaches

20  then transferred title to the Escalon Property to Ms. Solario alone, without Mr. De Jong's knowledge

21  or consent, despite all parties' knowledge of his interest in the Escalon Property. Title was conveyed

22  by deed from the Beaches to Ms. Solario on April 12, 2011. The deed was later recorded.

23       21.    Unaware that the Beaches had placed record title to the Escalon Property in Ms.

24  Solario's name, Mr. De Jong continued to protect his interest in that property by paying thousands of

25  dollars in property taxes assessed to that property and by paying another $8,000.00 to replace the

26  heating and air conditioning system for the property. Those payments were made after Mr. De Jong

27  had ended his relationship with Ms. Solario and moved out, and were made in the belief that Mr. De

28  Jong held an approximately eighty percent (80%) interest in that property.

22.     In or about December 2011, Mr. De Jong learned from a tax bill that title to the Escalon Property had been transferred from the Beaches to Ms. Solario. When he confronted her, Ms. Solario told him that she would put him on title whenever he wished, but that it was not necessary to do so because he would be paid his share when the property was sold. She told him that she would not "screw" him out of his money. Mr. De Jong is informed and believes and thereupon alleges that Ms. Solario made those representations to dissuade Mr. De Jong from taking action against her, but without any actual intent to perform.

23.     Relying upon Ms. Solario's representations, Mr. De Jong discussed plans with her to market and sell the property, and Ms. Solario hired a realtor that Mr. De Jong recommended: Lisa Steves, the daughter-in-law of one of the individuals who loaned Mr. De Jong the money to buy the Escalon Property. Ms. Steves was aware that Mr. De Jong was entitled to receive money from the sale of the Escalon Property and kept him involved in her efforts to sell it. Ms. Steves attempted to market the property but did not achieve a sale. Ms. Solario ultimately took the property off the market. Mr. De Jong became concerned that Ms. Solario that she was backtracking on her promises to him concerning the Escalon Property. In February 2014, Mr. De Jong presented Ms. Solario with a deed that would place Mr. De Jong on title to the Escalon Property and asked her to sign it. She refused to do so.

24.     On July 2, 2014, with the help of a different realtor with whom Mr. De Jong was not acquainted, Ms. Solario entered into a written agreement to sell the Escalon Property to Carlo and Irene Rivera for $610,000.00. She did not inform Mr. De Jong of that agreement and he was not aware of it. Seven days later, Ms. Solario entered into a separate written agreement to purchase the Ripon Property for $359,000. Ms. Solario did not inform Mr. De Jong that she had agreed to sell the Escalon Property, that she intended to purchase the Ripon Property, or that she planned to use the proceeds from the sale of the Escalon Property to purchase the Ripon Property.

25.     On July 28, 2014, Ms. Solario sold the Escalon Property for $610,704.50. Mr. De Jong's equitable share of the proceeds of that sale was not less than $460,663.03. The following day, Ms. Solario purchased and closed escrow for the Ripon Property. She bought it entirely with proceeds from the sale of the Escalon Property. Mr. De Jong was not privy to these transactions.

1213279-2                     Complaint to Determine Dischargeability of Debt

1    26.    Additionally, prior to the sale of the Escalon Property, Ms. Solario conspired with her

2  parents, Mr. and Mrs. Bellino, to pay them the additional sum of $150,000.00 from the proceeds of

3  the sale of the Escalon Property directly from escrow.  The Bellinos in fact received $150,000.00 of

4  the proceeds from the sale of the Escalon Property directly from escrow.

5    27.    When Mr. De Jong learned that Ms. Solario had covertly sold the Escalon Property,

6  he attempted to contact her but she did not respond.  On July 31, 2014, Mr. De Jong went to the

7  Escalon Property to confront Ms. Solario.  After initially refusing to answer the door or respond to

8  his calls, Ms. Solario emerged, handed Mr. De Jong a check for $25,000.00 (which she later

9  described as a "good faith" payment), and told him she would pay him more when she could.

10  Thereafter, Ms. Solario stopped responding to Mr. De Jong's attempted communications with her.

11    28.    Mr. De Jong confronted her a second time at the Ripon Property in early August

12  2014.  Ms. Solario asserted that she was entitled to the equity in the Escalon Property as a result of

13  her residing there and that she had purchased the Ripon Property because she needed somewhere to

14  live.  Ms. Solario assured Mr. De Jong that she would try to gather some money and pay him back,

15  but did not pay him anything further.

16    29.    On August 14, 2014, Mr. De Jong filed the *Beach* action in the Superior Court of

17  California, County of San Joaquin, against Ms. Solario, the Beaches, and the Bellinos.  The liability

18  phase of trial commenced on May 10, 2016 and concluded on May 20, 2016.  As detailed above, the

19  Superior Court entered an Interlocutory Judgment and Order in favor of Mr. De Jong.  Following the

20  punitive damages phase of trial, the Superior Court entered judgment in favor of Mr. De Jong and

21  against Ms. Solario and the others.

22    30.    In its final statement of decision ("SOD") entered on February 14, 2018, the Superior

23  Court found that Ms. Solario breached fiduciary duties owed to Mr. De Jong, converted his property,

24  fraudulently transferred his money to Mr. and Mrs. Bellino, conspired with and aided and abetted

25  Mr. and Mrs. Beach in the conversion of his property, and conspired with and aided and abetted Mr.

26  and Mrs. Bellino in the conversion and fraudulent transfer of proceeds from the sale of the Escalon

27  Property.  The Superior Court also found, *inter alia*, that Ms. Solario lied to Mr. De Jong about her

28  plans to acquire the Escalon Property from the Beaches, concealed the fact that she had done so,

7

falsely assured Mr. De Jong that he would be placed on title at his request and that he would be paid

from the proceeds of the sale, concealed her plans to sell the Escalon Property and convert his

interests in the proceeds thereof, sold that property and converted his interest in the proceeds thereof

without his knowledge or consent, and concealed both her plans to transfer $150,000.00 of the

proceeds to her parents and the transfer itself.  Illustrative quotations from the SOD include:

> In the first phase of trial, the Court found that Kimberly Solario breached fiduciary duties that she owed to Mr. De Jong, converted his property, fraudulently transferred his money to Nicola and Judith Bellino, conspired with and aided and abetted the Beaches in the breach of their fiduciary duties to Mr. De Jong, and conspired with and aided and abetted the Bellinos in the conversion of his property and the fraudulent transfer of proceeds from the sale of that property to them.  The Court's findings are further detailed in the SOD attached.  Particularly aggravating the reprehensibility of her conduct, Ms. Solario repeatedly lied to Mr. De Jong about her plans for the [Escalon Property], concealed both the acquisition of the Escalon Property and its sale from him, and deliberately sold that property and kept the proceeds despite knowing of his interest therein.  She was aware of Mr. De Jong's vulnerability and exploited it.  Her conduct was deliberate and part of a course of conduct that took place over a long period of time.  Considered as a whole, the Court finds that Ms. Solario's conduct was highly reprehensible and warrants a high amount of punitive damages, subject to her ability to pay.  [SOD, 4:7-19.]

> The Court also finds on the basis of clear and convincing evidence that the conduct of each of the aforementioned Defendants was despicable and was carried on with willful and conscious disregard of Mr. De Jong's rights to his equitable share of the proceeds from the sale of the Escalon Property, with which they were well aware, and was thus malicious within the meaning of *Civil Code* section 3294(c)(1).  The Court also finds on the basis of clear and convincing evidence that their conduct subjected Mr. De Jong to a cruel and unjust hardship in conscious disregard of his rights, and was thus oppressive within the meaning of *Civil Code* section 3294(c)(2). Based on the foregoing, and on the findings stated in this decision, the Court finds that Mr. De Jong is entitled to an award of exemplary or punitive damages against Ms. Solario, Mr. Bellino, and Mrs. Bellino.  [SOD, Exh. 1, 16:27-17:7.]

> The evidence showed that Ms. Solario and Mr. and Mrs. Bellino knew of Mr. De Jong's interest in the Escalon Property, but Ms. Solario secretly transferred the $150,000.00 in proceeds of the sale with intent to hinder, defraud, and delay payment to Mr. De Jong, to preferentially pay Mr. and Mrs. Bellino, and to attempt to put that money beyond Mr. De Jong's reach. [SOD, Exh. 1, 17:2-5.]

31.     As stated in his proofs of claim, Mr. De Jong calculates the amounts due to him from

Ms. Solario as of the date of the petition to be $254,486.65 on the judgment, including punitive

damages in the amount of $20,000.00; $197,978.12 as the amount to which Mr. De Jong is entitled

under California Code of Civil Procedure section 2044.320 for reimbursement of the reasonable

1  expenses of making proof of facts that Ms. Solario failed to admit in response to requests for

2  admission propounded by Mr. De Jong in the *Beach* action; and $7,991.70 as the estimated amount

3  of real property taxes on the Manley Property that Ms. Solario was ordered to pay but did not.

4      32.      On April 4, 2016, just over one month before the *Beach* action went to trial, Ms.

5  Solario filed a separate action of her own against Mr. De Jong and his wife in the Superior Court of

6  California, County of San Joaquin. That action is styled *Solario v. Dejong et al.* [sic], case no. STK-

7  CV-UPI-2016-0003162. No trial date has been set in that case as of the filing of this petition, and all

8  proceedings in that case were stayed by the filing of Ms. Solario's Chapter 7 bankruptcy petition in

9  this Court on May 8, 2018.

10     33.      Despite the pendency of the *Solario* case, Ms. Solario answered "no" to questions 33,

11  34, and 35 on Form 106A/B, entitled "Schedule A/B: Property," which she submitted with her

12  Chapter 7 bankruptcy petition. Question 33 asked Ms. Solario to list "Claims against third parties,

13  whether or not you have filed a lawsuit or made a demand for payment," and gives as examples

14  "Accidents, employment disputes, insurance claims, or rights to sue." Question 34 asked Ms.

15  Solario to identify any "Other contingent and unliquidated claims of every nature, including

16  counterclaims of the debtor and rights to set off claims." Question 35 asked Ms. Solario to identify

17  any financial assets she had not already listed. In fact, nothing in her original petition or schedules

18  identified the *Solario* case at all, let alone disclosed it as an asset.

19     34.      Mr. De Jong is informed and believes and thereupon alleges that Ms. Solario orally

20  repeated that falsehood at the meeting of creditors held by the Chapter 7 Trustee on June 19, 2018.

21  Additionally, Mr. De Jong is informed and believes and thereupon alleges that, when asked by the

22  Chapter 7 Trustee whether Ms. Solario had previously filed bankruptcy, Ms. Solario answered that

23  she had not. In fact, Ms. Solario and her ex-husband Christopher Solario filed Chapter 7 bankruptcy

24  on February 21, 2006 and received a discharge.

25     35.      Mr. De Jong attended the meeting of creditors on June 19, 2018, and the Chapter 7

26  Trustee, who had been advised of the *Solario* action by Mr. De Jong, advised Ms. Solario at the

27  hearing that she would need to amend her petition to list the *Solario* action as an asset. Ms. Solario

28  filed amended schedules identifying that lawsuit on July 5, 2018.

1213279-2            Complaint to Determine Dischargeability of Debt

1

**FIRST CLAIM FOR DETERMINATION OF DISCHARGEABILITY OF DEBT**

2

**[11 U.S.C., §§ 523(a)(2)(A)]**

3       36.     Mr. De Jong hereby incorporates and realleges the foregoing paragraphs 1 to 35 as

4  though fully set forth herein.  To the extent of any inconsistency, these allegations are pleaded in the

5  alternative.

6       37.     Pursuant to 11 U.S.C., section 523(a)(2)(A), a discharge in Chapter 7 does not

7  discharge an individual debtor from any debt for money or property to the extent obtained by "false

8  pretenses, a false representation, or actual fraud, other that a statement respecting the debtor's or an

9  insider's financial condition."

10      38.     As detailed above, Ms. Solario obtained more than $460,663.03 from Mr. De Jong by

11  means of false pretenses, false representation, and actual fraud.  Accordingly, Mr. De Jong

12  respectfully prays for relief as set forth below.

13

**SECOND CLAIM FOR DETERMINATION OF DISCHARGEABILITY OF DEBT**

14

**[11 U.S.C., § 523(a)(4)]**

15      39.     Mr. De Jong hereby incorporates and realleges the foregoing paragraphs 1 to 35 as

16  though fully set forth herein.  To the extent of any inconsistency, these allegations and pleaded in the

17  alternative.

18      40.     Pursuant to 11 U.S.C., section 523(a)(2)(4), a discharge in Chapter 7 does not

19  discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary

20  capacity, embezzlement, or larceny."

21      41.     As detailed above, Ms. Solario obtained more than $460,663.03 from Mr. De Jong by

22  means of fraud or defalcation while acting in a fiduciary capacity.  Having acquired record title to

23  the Escalon Property with knowledge of Mr. De Jong's equitable interest therein, Ms. Solario held

24  that property in trust for the benefit of Mr. De Jong to the extent of his interest therein.  Furthermore,

25  Ms. Solario explicitly acknowledged that trust relationship by promising to add Mr. De Jong to title

26  at his request and promising to pay him his share upon the sale of the Escalon Property, as well as by

27  engaging a realtor at his request and purporting to work cooperatively with him to sell the property.

28  / / /

1213279-2          Complaint to Determine Dischargeability of Debt

1    In breach of those duties, Ms. Solario secretly sold the Escalon Property behind Mr. De Jong's back
2    and converted his share of the proceeds.

3        42.    Additionally, as detailed above, Ms. Solario obtained that property from Mr. De Jong
4    by means of embezzlement.  Despite her knowledge of Mr. De Jong's interest in the Escalon
5    Property and despite her representations to Mr. De Jong, Ms. Solario sold the Escalon Property
6    without Mr. De Jong's knowledge or consent and intentionally retained the proceeds for herself,
7    used them to purchase property for herself, or paid or fraudulently conveyed them to her parents.

8        43.    Furthermore, as detailed above, Ms. Solario obtained that property from Mr. De
9    Jong by larceny.  Despite her knowledge of Mr. De Jong's interest in the Escalon Property and
10   despite her representations to Mr. De Jong, Ms. Solario sold the Escalon Property without Mr. De
11   Jong's knowledge or consent and wrongfully retained the proceeds for herself, used them to
12   purchase property for herself, or paid or fraudulently conveyed them to her parents.

13       44.    Notably, the Superior Court in the *Beach* action found that Ms. Solario had breached
14   fiduciary duties that owed to Mr. De Jong, converted his interest in the proceeds of the Escalon
15   Property, and fraudulently transferred a portion of those proceeds to her parents.  The Superior Court
16   also found that Ms. Solario had acted willfully, maliciously, and in conscious disregard of Mr. De
17   Jong's rights, and assessed punitive damages accordingly.  (As to Ms. Solario's parents, the Court
18   assessed punitive damages totaling $750,000.00.  The Superior Court almost assuredly would have
19   assessed a much larger amount of punitive damages against Ms. Solario than the $20,000.00 that it
20   did assess against her but for its findings concerning her ability to pay.)

21       45.    Accordingly, Mr. De Jong respectfully prays for relief as set forth below.

22   **THIRD CLAIM FOR DETERMINATION OF DISCHARGEABILITY OF DEBT**
23   **[11 U.S.C., § 523(a)(6)]**

24       46.    Mr. De Jong hereby incorporates and realleges the foregoing paragraphs 1 to 35 as
25   though fully set forth herein.  To the extent of any inconsistency, these allegations and pleaded in the
26   alternative.

27   / / /

28   / / /

11

1    47.    Pursuant to 11 U.S.C., section 523(a)(6), a discharge in Chapter 7 does not discharge

2 an individual debtor from any debt "for willful and malicious injury by the debtor to another entity

3 or to the property of another entity."

4    48.    As detailed above, Ms. Solario willfully and maliciously converted at least

5 $460,663.03 from Mr. De Jong.

6    49.    Notably, the Superior Court in the *Beach* action found that Ms. Solario had breached

7 fiduciary duties that owed to Mr. De Jong, converted his interest in the proceeds of the Escalon

8 Property, and fraudulently transferred a portion of those proceeds to her parents. The Superior Court

9 also found that Ms. Solario had acted willfully, maliciously, and in conscious disregard of Mr. De

10 Jong's rights, and assessed punitive damages accordingly. (As to Ms. Solario's parents, the Court

11 assessed punitive damages totaling $750,000.00. The Superior Court almost assuredly would have

12 assessed a much larger amount of punitive damages against Ms. Solario than the $20,000.00 that it

13 did assess against her but for its findings concerning her ability to pay.)

14    50.    Accordingly, Mr. De Jong respectfully prays for relief as set forth below.

15 **PRAYER FOR RELIEF**

16 WHEREFORE, Plaintiffs prays for judgment as follows:

17    1.    For a determination that Ms. Solario owes Mr. De Jong a debt arising from the

18 matters herein alleged of not less than $459,547.77, together with interest thereon at the maximum

19 legal rate, and that Mr. De Jong shall recover such debt from Ms. Solario;

20    2.    For a determination that the debt of Ms. Solario to Mr. De Jong on the matters herein

21 alleged is not to be discharged in her Chapter 7 bankruptcy;

22    3.    For costs of suit herein incurred, including reasonable attorney fees if warranted; and

23    4.    For such other and further relief as the Court may deem just and proper.

24 Dated: August 17, 2018    NEUMILLER & BEARDSLEE
A PROFESSIONAL CORPORATION

By: MICHAEL R. TENER

Attorneys for Plaintiff,
CRAIG DE JONG

12

1213279-2    Complaint to Determine Dischargeability of Debt