*FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re                    )    Case No.  18-90339-E-7

KIMBERLY ROSE SOLARIO,   )

        Debtor.          )

_____)

CRAIG DE JONG,         )    Adv. Proc. No. 18-9014

                 )    Docket Control No. NEU-3

        Plaintiff,     )

v.                )

KIMBERLY ROSE SOLARIO,   )

        Defendant.    )

_____)

## MEMORANDUM OPINION AND DECISION

Craig De Jong ("Plaintiff") filed the instant adversary proceeding on August 17, 2018, against Kimberly Rose Solario ("Defendant-Debtor").  Plaintiff has submitted Proofs of Claim No. 2-1, No. 3-1, and No. 4-1, asserting a total obligation thereon of $460,465.47 in Defendant-Debtor's Chapter 7 bankruptcy case (18-90339).  The obligations asserted under each of the three proofs of claim are discussed below in this Decision.  Each of the claims is based on the final judgment or orders of the Superior Court (the "State Court") in *De Jong v. George Beach, Susan Beach, Kimberly Solario [Defendant-Debtor] et al*, California Superior Court of the County of San Joaquin Case No. 39-2014-00314863 ("State Court Action").  For this Decision, the court establishes the

additional following defined terms:

       Final Judgment in State Court Action,
       Exhibit 4, Dckt. 34 at 58-60................................................... "State Court Judgment"

       Final Decision in Support of State Court Judgment
       Exhibit 3, *Id.* at 17-23............................................................ "Final Decision"

       Interlocutory Decision Incorporated into Final Decision
       Exhibit 1 to the Final Decision, *Id.* at 25-48........................... "Interlocutory Decision"

       Interlocutory Judgement and Order to Pay Taxes
       Exhibit to Proof of Claim No. 2-1;
       Exhibit 8, *Id.* at 83-88............................................................ "Interlocutory Judgment and
                                                                           Order to Pay Property Taxes"
       Order For Damages Pursuant to
       California Code of Civil Procedure § 2033.420
       Exhibit to Proof of Claim No. 4-1; Exhibit 10, *Id.* at 130-133..... "2033.420 Order"

       State Court Judge Issuing Orders and Judgment
       In the State Court Action............................................................. "State Court Judge"

       Now before the court is Plaintiff's Motion for Summary Judgment requesting a determination that each of Plaintiff's three claims are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6), and each of them, as claims arising from fraud, embezzlement or larceny, and willful and malicious conduct by Defendant-Debtor. Dckt. 36.

       The court grants the Motion for Summary Judgment and judgment shall be entered for Plaintiff determining that the obligations set forth in Proofs of Claim 2-1, 3-1, and 4-1 are nondischargeable.

## REVIEW OF MOTION FOR SUMMARY JUDGMENT

       On October 10, 2019, Plaintiff filed the instant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056. Dckt. 18. Plaintiff asserts that his claims should be nondischargeable because the findings in support of the final judgment in the State Court Action are sufficient to show that some or all of the debts owed by Defendant-Debtor to Plaintiff are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6). Specifically, Plaintiff argues that the court found sufficient facts that demonstrate larceny or embezzlement, that Defendant-Debtor's conduct was willful and malicious, and that Defendant-Debtor obtained money by false pretenses, false representations, or actual fraud.

       Plaintiff requests that the court determine that the issues litigated in the State Court Action

be afforded preclusive effect in this adversary proceeding.  Plaintiff asserts that it is appropriate for the court to do so here because the judgment satisfies the threshold requirements for issue preclusion under California law and doing so does not run counter to public policy.

The State Court Action was conducted in two phases.  The first was the trial on liability and actual damages.  The Interlocutory Judgment and Order to Pay Taxes, and Interlocutory Decision from the first phase were issued on March 22, 2017.

The second phase was on the issue of punitive damages that were sought by Plaintiff.  The State Court issued the Final Judgment and Final Decision, which incorporated the Interlocutory Decision into the Final Decision.  Exhibit 3, Final Decision, p. 2:27-28; Dckt. 34.[1]

Both the Interlocutory Judgment and Interlocutory Decision are attached as Exhibits to the Final Decision (Exhibit 1 thereto) (beginning on page 24 of 153 of the Exhibits, *Id.*) and the Interlocutory Judgment and Order (Exhibit 2 thereto) (beginning on page 59 of 153 pages of the Exhibits, *Id.*).

The Final Judgment ( Exhibit 4, *Id.*), issued on February 14, 2018, states the following relief given Plaintiff against Defendant-Debtor:

A.      Judgment in the amount of ................................................$460,663.00

B.      Prejudgment interest from July 28, 2014, at the rate of
        7% per annum to the February 14, 2018 Entry of  the Judgment.

C.      A credit of ($359,000.00) as of May 30, 2017, against the judgment
        for the turnover of the 484 S. Manley Road, Ripon, California
        property (the "Ripon Property") to the Plaintiff on that date.

D.      Punitive Damages against Defendant-Debtor......................$ 20,000.00
        [punitive damages aggregating $850,000.00 were awarded
        against the other four defendants in the State Court Action]

E.      Costs of Suit......................................$ TDB  by Post-Judgment Memorandum

F.      Plaintiff is determined to be the sole owner of the Ripon Property.

G.      All right, title, and interest to the Ripon Property are the separate property of Plaintiff
        and the judgment may be recorded to so reflect that true state of title to the Ripon
        Property.

---

[1]  The page number reference, unless otherwise stated, is to the page number of the specific exhibit, and not the page number of the entire 153 pages of exhibits.

Defendant-Debtor abandoned and dismissed her appeal of the Final Judgment on June 14, 2015. Exhibit 5, *Id.* at 61. The Defendant-Debtor's appeal of the Final Judgment was dismissed by order of the District Court of Appeal. Exhibit 6, *Id.* pages 64-68.

**REVIEW OF THE THREE PROOFS OF CLAIM, JUDGMENT, AND ORDERS UPON WHICH THE PROOFS OF CLAIM ARE BASED**

**Proof of Claim No. 2-1, Exhibit 8**

The amount of the claim is stated to be $7,991.70. The basis for this claim is the asserted failure of the Defendant-Debtor to comply with the Interlocutory Judgment and Order of the State Court for Defendant-Debtor to pay property taxes on the Ripon Property. The Interlocutory Judgment and Order are an attachment to Proof of Claim No. 2-1 (as well as filed separately as an Exhibit and attached to the Final Decision).

The Interlocutory Decision and Order, ¶ 13; Attachment to Proof of Claim No. 2-1 filed as Exhibit 8, *Id.*, includes the following express language ordering the turnover of the Ripon Property by Defendant-Debtor to Plaintiff and the payment of property taxes:

A.   Defendant-Debtor is ordered to deliver exclusive possession of the Ripon Property to Plaintiff within thirty days of service of the notice of entry of the Interlocutory Judgment and Order. The Interlocutory Judgment and Order are dated March 29, 2017.

B.   Plaintiff may enforce the order for turnover of the Ripon Property at any time after the expiration of the thirty-day period given to Defendant-Debtor to comply with the order.

C.   Until possession of the Ripon Property is turned over to Plaintiff, the Defendant-Debtor is to pay all property taxes when due, and obtain and maintain insurance on the property.

D.   Upon timely delivery of possession of the Ripon Property by Defendant-Debtor to Plaintiff, there shall be a credit of $359,000.00, as of the date of the transfer to Plaintiff.

The Final Judgment states that the credit for the $359,000.00 is given as of May 30, 2017, which is stated to be the date the Ripon Property was turned over to Plaintiff. Exhibit 4, *Id.*

A second attachment to Proof of Claim No. 2-1 is Plaintiff's computation of the $7,991.70 due for unpaid property taxes, which provides the following calculation of the taxes, including principal, penalty, and costs:

4

| 1 | A. | 2014 Tax Year...............................$ 193.21 |
| 2 | B. | 2015 Tax Year...............................$2,816.21 |
| 3 | C. | 2016 Tax Year...............................$4,982.28 |

4   The Interlocutory Decision does not clearly identify that these past due taxes are being
5 ordered paid as part of the turnover ordered by the court. The above unpaid taxes appear to be in
6 the nature of damages that predate the judgment. The court's order to pay the taxes appears to be
7 prospective, stating that Defendant-Debtor shall "pay all property taxes upon the Ripon Property
8 when due." The Order having been issued March 29, 2017, it appears that this would be for taxes
9 after that time.

10 **Proof of Claim No. 3-1, Exhibit 9**

11   Proof of Claim No. 3-1 is filed in the amount of $254,486.65 for the obligation owing on the
12 Final Judgment. This includes the pre- and post-judgment interest, compensatory damages, punitive
13 damages, and costs as of February 14, 2018.

14 **Proof of Claim No. 4-1, Exhibit 10**

15   Proof of Claim No. 4-1 asserts a claim in the amount of $197,987.12 and is based on an order
16 obtained pursuant to California Code of Civil Procedure § 2033.420 for Expenses of Making Proof
17 in the State Court Action. The Order includes findings that Defendant-Debtor, as well as other of
18 the State Court Action defendants failed to admit specific Requests for Admissions which Plaintiff
19 then had to prove at trial. The $197,987.12 is the award for the expenses in Plaintiff having to prove
20 the facts which Defendant-Debtor and the other State Court Action defendants failed to admit.

21   California Code of Civil Procedure § 2033.420 provides that when a party in an action fails
22 to admit the genuineness of any document or the truth of any matter when requested to do so as
23 provided under the California Code of Civil Procedure, then "the party requesting the admission
24 [here the Plaintiff] may move the court for an order requiring the party to whom the request was
25 directed to pay the reasonable expenses incurred in making that proof, including reasonable
26 attorney's fees." California Code of Civil Procedure § 2033.420 goes further, requiring the court
27 to issue an order awarding such expenses unless one of the specified statutory exceptions
28 enumerated exist.

1    As discussed in the RUTTER GROUP CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE

2    BEFORE TRIAL, the award of damages under California Code of Civil Procedure § 2033.420 is to

3    reimburse the injured party to the reasonable expenses in providing the items which the opposing

4    party refused to admit, and not sanctions or a penalty awarded on top of the damages. These

5    damages are awarded when the other party has no reasonable basis for not admitting the fact, not

6    merely that the court determined a fact against them. *Orange County Water District v. The Arnold*

7    *Engineering Co.*, 31 Cal.App. 5th 96, 115-116 (2018). With respect to the conduct of the party

8    against whom damages are awarded pursuant to California Code of Civil Procedure § 2033.420, the

9    California District Court of Appeal stated:

10

11    "'In evaluating whether a "good reason" exists for denying a request to admit, "a court may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial." [Citation.]'" *(Grace v. Mansourian* (2015) 240 Cal.App.4th 523, 529 *(Grace)*; accord, *Laabs, supra*, 163 Cal.App.4th at p. 1276; *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1066 *(Miller)*.) A party's reasonable belief must be grounded in the evidence; it cannot be based merely on "hope or a roll of the dice." *(Grace*, at p. 532.) It is also not enough for a party making the denial to "'hotly contest'" the issue; instead, "there must be some reasonable basis for contesting the issue in question before sanctions can be avoided." *(Brooks, supra*, 179 Cal.App.3d at p. 511.) Indeed, "the mere fact [that a party] presented evidence at trial is not an automatic justification for denial of the requests. Rather, the issue is whether, in light of that evidence, [the party] could reasonably believe they would prevail." *(Grace*, at p. 531.)

18    On the other hand, "[e]xpenses of proving disputed facts which an opposing party denies in response to a request for admission are not recoverable simply because the party promulgating the request prevails at trial." *(Brooks, supra*, 179 Cal.App.3d at p. 513.) The opposing party must have no reasonable basis to believe it would prevail. *(Grace, supra*, 240 Cal.App.4th at p. 531.)

21    *Id.*

22    This Interlocutory Judgment and Order (made final after the punitive damages phase of the

23    trial) was issued by the judge in the State Court Action. Attachment to Proof of Claim No. 2-1, at 2.

24    This included making final the Interlocutory Judgment entered after the first phase of the State Court

25    Trial to determine the actual damages, with the determination of punitive damages being made in

26    the second trial phase in the State Court Action.

27    ///

28    ///

6

## FINDINGS AND CONCLUSIONS FOR
## STATE COURT JUDGMENT,
## INTERLOCUTORY JUDGMENT AND ORDER TO PAY TAXES
## AND
## § 2033.420 ORDER

The Final Decision contains extensive findings and conclusions in support of the various monetary awards. The Final Decision is seven pages, the Interlocutory Decision incorporated into the Final Decision is twenty-four pages, and the Order Granting California Code of Civil Procedure § 2033.420 Expenses is three pages in length. The court has provided below and in Addendum A attached hereto, a detailed summary of some, but not all, of the findings and conclusions in granting the Final and Interlocutory judgments for the Plaintiff and the § 2033.420 Order.

**Findings and Conclusions in**
**State Court Action Final Decision**

The express findings include there being a fiduciary duty owed by Defendant-Debtor to Plaintiff arising from a resulting trust. Further, that Defendant-Debtor made express, false representations to Plaintiff to induce him to allow Defendant-Debtor to control the 21334 E. River Road, Escalon, California property (the "Escalon Property"), in which Plaintiff owned an 80.02% interest but was not on record title. That Defendant-Debtor and other State Court Action defendants subsequently placed title to the Escalon Property in Defendant-Debtor's name so that she could sell it to an innocent *bona fide* purchaser for value. This was done not only in breach of some of the other State Court Action defendants fiduciary duties to Plaintiff, but that Defendant-Debtor would then divert the proceeds from the sale away from Plaintiff, use the proceeds to pay some of the other State Court Action defendants, and use the proceeds to purchase the Ripon Property for Defendant-Debtor's sole benefit.

In addition to the breach of fiduciary duty, the Final Decision findings and conclusions include that Defendant-Debtor converted Plaintiff's portion of the proceeds from the sale of the Escalon Property.

The economic damages from the breach of fiduciary duty and conversion awarded are $460,663.03. This is the value of Plaintiff's 80.02% interest in the Escalon Property transferred by Defendant-Debtor and then the 80.02% interest in the proceeds from the sale of the Escalon Property

7

1  to the third-party *bona fide* purchaser for value.  These are two alternative grounds for Defendant-
2  Debtor's liability for the $460,663.03.

3         The Final Decision findings and conclusions expressly include that Defendant-Debtor's
4  conduct was carried on with willful and conscious disregard of Plaintiff's rights; Defendant-Debtor
5  was aware of such rights; Defendant-Debtor's conduct was malicious within the meaning of
6  California Civil Code § 3294(c)(1); and Defendant-Debtor's conduct subjected Plaintiff to cruel and
7  unjust hardship; which conduct was done in conscious disregard of Plaintiff's rights, making it
8  oppressive within the meaning of California Civil Code § 3294(c)(2).

9         These provisions of the Civil Code set the grounds when conduct of a person warrants the
10  imposition of punitive damages.  The two provisions expressly found to exist in the Final Decision
11  findings and conclusions  are separate and independent grounds for awarding punitive damages.
12  Cal. Civ. § 3294(a).

13         The Final Decision findings and conclusions further include that Defendant-Debtor was also
14  liable to Plaintiff for the $460,663.03 on the grounds of unjust enrichment –  the amount of sale
15  proceeds relating to Plaintiff's 80.02% interest that Defendant-Debtor converted.

16         In the Final Decision, the State Court Judge adopted and incorporated the Interlocutory
17  Decision.  The State Court Judge reviewed and restated the conduct of Defendant-Debtor in
18  breaching her fiduciary duty to Plaintiff, Defendant-Debtor assisting others in breaching their
19  independent fiduciary duties to Plaintiff, and  Defendant-Debtor converting Plaintiff's assets.

20         The State Court Judge awarded Plaintiff "only" $20,000.00 in punitive damages against
21  Defendant-Debtor in light of her limited assets, having $1,000.00 a month in excess income, and an
22  analysis of what constituted proper punitive damages for the Defendant-Debtor.  This court says
23  "only" not because $20,000.00 is an insignificant amount, but in light of the State Court Judge
24  awarding $100,000.00 in punitive damages against Mr. and Mrs. Beach (joint and several liability),
25  and $750,000.00 in punitive damages against Mr. Bellino (Defendant-Debtor's father), and
26  Mrs. Bellino (Defendant-Debtor's mother) (joint and several liability) for their respective conduct
27  that was the subject of the State Court Action.
28  ///

**Findings and Conclusions for Awarding Damages**
**Pursuant to California Code of Civil Procedure § 2033.420**

The State Court Judge made separate findings of fact and conclusions of law in awarding damages for the expenses incurred by Plaintiff due to Defendant-Debtor's failure to admit specific Requests for Admissions for which Defendant-Debtor had no reasonable basis for denying or failing to admit. These findings are stated in the 2033.420 Order. These include denying knowledge of Plaintiff's interest in the Escalon Property, denying knowledge that Plaintiff had contributed the majority of the monies to purchase the Escalon Property (of which he owned 80.02% interest), denying the amount she paid the Beaches to purchase the Escalon Property was less than the fair market value, denying that she promised to place Defendant-Debtor on title of the Escalon Property, and denying that she knew that Plaintiff asserted an ownership interest in the proceeds from the sale of the Escalon Property. Exhibit 11, Dckt. 34; Requests for Admissions summarized in Addendum A to this Ruling.

In reviewing the findings and conclusions in the Final Decision (which incorporates the Interlocutory Decision), the findings necessary for the 2033.420 Order included the wrongful denying, without any reasonable basis, of knowledge of Plaintiff's interest in the Escalon Property. Defendant-Debtor knew of and promised Plaintiff that she would put him on title to that Property. Defendant-Debtor promised to pay Plaintiff his share of the sales proceeds for his 80.02% interest in the Escalon Property.

In substance, the State Court Judge awarded these damages due to the continuing misrepresentations of Defendant-Debtor, denying what was proven she actually knew and had no reasonable basis for not admitting. Without any reasonable basis, Defendant-Debtor put Plaintiff to the cost and expense of showing that Defendant-Debtor knew of his interest in the Escalon Property, made misrepresentations as to what she would do in connection with her knowledge of that interest, and that Defendant-Debtor sold and then diverted the proceeds of the sale of the Escalon Property to buy the Ripon Property in only her name.

Of the total $189,532.00 in damages caused by the denying or failing to admit without any reasonable basis the requested Admissions, $183,182.00 were allocated to Defendant-Debtor.

1 These damages were jointly and severally awarded against the four other State Court Action

2 defendants, with their liabilities being set in the mid-$150,000's. 2033.420 Order, p. 3; Attachment

3 to Proof of Claim No. 4-1, Exhibit 10; *Id.*

**Review of Opposition Presented by Defendant-Debtor**

5 Defendant-Debtor filed an Opposition to the Motion for Summary Judgment on

6 November 12, 2019. Dckt. 42. This Opposition is one hundred and twelve pages in length and

7 requests not only the denial of the Motion for Summary of Judgment, but the dismissal of this

8 Adversary Proceeding. The first six pages (single spaced) constitute the opposition, and the balance

9 of the document are exhibits.

10 The court begins with a review of the Opposition and the grounds stated therein. The

11 grounds for the opposition are summarized as follows:

A. The State Court erred in finding that Defendant-Debtor owed a fiduciary duty to Plaintiff. Opposition ¶ 4, *Id.*

B. The award of punitive damages is in error because Defendant-Debtor did not act willfully or with malice or oppression. *Id.*

C. Unjust enrichment is not a cause of action or remedy under California law, but merely a general principle underlying legal doctrines and remedies. *Id.*

D. Judicial estoppel should be applied to deny recovery to Plaintiff under the State Court Judgment against Defendant-Debtor based upon Plaintiff's statements in a divorce proceeding (does not state how it relates to Defendant-Debtor) that he had no interest in the Escalon Property. *Id.*, ¶ 5.

E. Plaintiff cannot claim the loss upon which the State Court Judgment was issued because the loss, if any, should belong to his corporation. *Id.*

F. It is inequitable that the State Court Judgment was granted Plaintiff. *Id.*

G. Defendant-Debtor submitted evidence in support of the above in the State Court Action. *Id.*

H. The California Evidence Code created a presumption that the record title holder is presumed to be the owner of "full beneficial title." *Id.*, ¶ 6.

I. California Civil Code § 1624 renders certain contracts invalid if they are not in writing. *Id.*, ¶ 7.

J. Plaintiff was not entitled to the punitive damages awarded to him in the State Court Judgment. The Defendant-Debtor feels that the State Court was in error in awarding the punitive damages. *Id.*, ¶ 8.

K. Defendant-Debtor asserts that in the State Court Action it was "established" that

10

1    Plaintiff created his own loss.  *Id.* ¶ 9.  Defendant-Debtor argues the extensive
     evidence presented at the trial in the State Court Action for this asserted error in the
2    State Court Judgment.

3    L.    Plaintiff has not shown facts to support nondischargeability pursuant to 11 U.S.C.
           § 524(a)(4).  *Id.*, ¶ 10.
4
     M.    Plaintiff has not proved that Defendant-Debtor acquired money belonging to Plaintiff
5          through false pretenses or fraud.  *Id.*, ¶ 11.

6    N.    Defendant-Debtor discusses her limited assets and the toll on her due to the stress of
           the State Court Action. *Id.*, ¶ 12.  The award of punitive damages against Defendant-
7          Debtor, in light of her limited income and assets, was in error.  *Id.*

8          Attached to the Opposition is Plaintiff's Statement of Undisputed Facts for which Defendant-

9    Debtor has typed in replies in very small font.  *Id.* at 7-18.  These replies are for forty-seven (47)

10   proposed statements of undisputed facts that Defendant-Debtor did not admit in the State Court

11   Action.  Many of these replies are citations to the trial record why Defendant-Debtor asserts she did

12   not have to admit the proposed undisputed facts.  Further, she argues why the State Court Judge was

13   in error in concluding that Defendant-Debtor improperly failed to admit the proposed undisputed

14   facts.

15         Because this court is ruling on this Motion for Summary Judgment applying the principles

16   of Collateral Estoppel under the Doctrine of *Res Judicata*, there is no "evidentiary" or "factual"

17   dispute.  The State Court findings, conclusions, and judgment are what they state.

18         Defendant-Debtor's argument is that the State Court was in error to grant Plaintiff the State

19   Court Judgment and that this court should "correct" that error by allowing Defendant-Debtor to

20   discharge those obligations as determined by the State Court Judgment and 2044.420 Order.  This

21   bankruptcy court does not sit as an appellate court to review and reverse a judgment of a California

22   Superior Court.

23         **APPLICABLE LAW TO DETERMINE A MOTION FOR SUMMARY JUDGMENT**

24         In an adversary proceeding, summary judgment is proper when "[t]he movant shows that

25   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

26   of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion

27   for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P.

28   56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248–50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.11[1][b] (3d ed. 2000). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza )*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

In response to a sufficiently supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial. *Barboza*, 545 F.3d at 707, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The nonmoving party cannot rely on allegations or denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that a dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a summary judgment motion, the court must view all of the evidence in the light most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage [,] the judge's function is not himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

///

**APPLICATION OF ISSUE PRECLUSION TO A STATE COURT JUDGMENT**

The bankruptcy court may give preclusive effect to a state court judgment as the basis for excepting a debt from discharge. As stated by the Supreme Court in *Grogan v. Garner*, 498 U.S. 279, 285 (1991) [emphasis added],

> Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel apply in bankruptcy proceedings under the current Bankruptcy Act. *See, e.g., Kelly v. Robinson*, 479 U.S. 36, 48, n.8, 93 L. Ed. 2d 216, 107 S. Ct. 353 (1986); *Brown v. Felsen*, 442 U.S. at 139, n.10. *Cf. Heiser v. Woodruff*, 327 U.S. 726, 736, 90 L. Ed. 970, 66 S. Ct. 853 (1946) (applying collateral estoppel under an earlier version of the bankruptcy laws). Virtually every Court of Appeals has concluded that collateral estoppel is applicable in discharge exception proceedings. *See In re Braen*, 900 F.2d at 630; *Combs v. Richardson*, 838 F.2d at 115; *Klingman v. Levinson*, 831 F.2d 1292, 1295 (CA7 1987); *In re Shuler*, 722 F.2d 1253, 1256 (CA5), *cert. denied sub nom. Harold V. Simpson & Co. v. Shuler*, 469 U.S. 817, 83 L. Ed. 2d 32, 105 S. Ct. 85 (1984); *Goss v. Goss*, 722 F.2d 599, 604 (CA10 1983); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (CA8 1983); *Spilman v. Harley*, 656 F.2d 224, 228 (CA6 1981). *Cf. In re Rahm*, 641 F.2d 755, 757 (CA9) (prior judgment establishes only a *prima facie* case of nondischargeability), *cert. denied sub nom. Gregg v. Rahm*, 454 U.S. 860, 70 L. Ed. 2d 157, 102 S. Ct. 313 (1981). **We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).**

In applying the principles of Collateral Estoppel, it is important to distinguish Collateral Estoppel issue preclusion, which prevents the re-determination of issues which were part of an earlier judgment, and *Res Judicata* action preclusion which prevents the subsequent filing of an action. Many of the cases in which the courts have held that *Res Judicata* does not apply to a state court judgment have been when the debtor attempts to assert that a creditor's judgment for breach of contract precludes the creditor from subsequently filing a nondischargeability action for fraud.

In *Cal-Micro, Inc. v. Cantrell,* 329 F.3d 1119 (9th Cir. 2003), the Ninth Circuit Court of Appeals restated the established rule of law that 28 U.S.C. §1738 [2] requires the federal courts to

---

[2] 28 U.S.C. § 1738.

§ 1738. State and Territorial statutes and judicial proceedings; full faith and credit

The Acts of legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or

1  give full faith and credit to a state's (California's) collateral estoppel principles, citing to the earlier

2  Ninth Circuit decision, *Gayden v. Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995). *See also Harmon*

3  *v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir. 2001). The court applies the forum state's

4  law of issue preclusion. *Id.* Here, as was the case in *Harmon*, California is the relevant state law

5  and under California law issue preclusion is only appropriate when five threshold factors are met:

6                           (1) the judgment is final;

7                           (2) the issue(s) are identical;

8                           (3) the proceeding was actually litigated;

9                           (4) the issue was necessarily decided in the former proceeding; and

10                           (5) the parties are the same or were in privity.

11  *Id.* at 1245; *see also In re Riley*, 2016 WL 3351397, at *4 (B.A.P. 9th Cir. June 8, 2016) (*citing DNK*

12  *Holdings, LLC v. Faerber,* 61 Cal.4th 813, 825 (2015)).

13        A court is not required to apply issue preclusion even if the five threshold factors are met

14  because the court is also charged with determining whether issue preclusion "furthers the public

15  policies underlying the doctrine." *In re Harmon*, 250 F.3d at 1245 (citing *Lucido v. Super. Ct.*,

16  51 Cal.3d 335 (1990)). In short, the decision to apply issue preclusion is discretionary.

17        The party asserting issue preclusion "carries the burden of proving a record sufficient to

18  reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *In re Lambert*,

19  233 Fed. Appx. 598, 599 (9th Cir. 2007).

20

21  _____

     Possession thereto.

22

23       The records and judicial proceedings of any court of any such State, Territory or
     Possession, or copies thereof, shall be proved or admitted in other courts within the

24       United States and its Territories and Possessions by the attestation of the clerk and seal of
     the court annexed, if a seal exists, together with a certificate of a judge of the court that

25       the said attestation is in proper form.

26       Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall

27       have the same full faith and credit in every court within the United States and its
     Territories and Possessions as they have by law or usage in the courts of such State,

28       Territory or Possession from which they are taken.

**REVIEW OF STATUTORY NONDISCHARGEABILITY GROUNDS**

**False Pretenses, False Representations,**
**or Actual Fraud – 11 U.S.C. § 523(a)(2)(A)**

Congress provides in 11 U.S.C. § 523(a)(2)(A) that debts which are based upon fraud will be nondischargeable. For "traditional fraud," the creditor is required to establish the following five elements:

> (1) the debtor made . . . representations;
>
> (2) that at the time he knew they were false;
>
> (3) that he made them with the intention and purpose of deceiving the creditor;
>
> (4) that the creditor justifiably relied on such representations; [and]
>
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010). A creditor must show these elements by a preponderance of evidence. *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000). 11 U.S.C. § 523(a)(2)(A) prevents the discharge of all liability arising from fraud. *Cohen v. de la Cruz,* 523 U.S. 213, 215 (1998).

As noted by the Supreme Court in *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016), the term "actual fraud" as used in 11 U.S.C. § 523(a)(2) includes fraudulent conveyance schemes that would not include a "representation," but are fraudulent under applicable non-bankruptcy law. Here, the State Court Judge made express findings of fraudulent conveyance and transactions constructed by Defendant-Debtor and her co-defendants in the State Court Action to injure Plaintiff's interests.

**Debt for Embezzlement or Larceny –**
**11 U.S.C. § 523(a)(4)**

In section 523(a)(4), the term "while acting in a fiduciary capacity" does not qualify the words "embezzlement" or "larceny." Therefore, any debt resulting from embezzlement or larceny falls within the exception of clause (4). *In re Booker*, 165 B.R. 164 (Bankr. M.D.N.C. 1994); *see also In re Brady*, 101 F.3d 1165 (6th Cir. 1996); *In re Littleton*, 942 F.2d 551 (9th Cir. 1991).

The Ninth Circuit Court of Appeals laid out the elements for nondischargeability based on

1   embezzlement in *Littleton v. Transamerica Commercial Finance*, 942 F.2d 551 (9th Cir. 1991).

2       Under federal law, embezzlement in the context of nondischargeability has often
3       been defined as "the fraudulent appropriation of property by a person to whom such
        property has been entrusted or into whose hands it has lawfully come." *Moore v.*
4       *United States*, 160 U.S. 268, 269, 40 L. Ed. 422, 16 S. Ct. 294 (1885).
        Embezzlement, thus, requires three elements: "(1) property rightfully in the
5       possession of a nonowner; (2) nonowner's appropriation of the property to a use
        other than which [it] was entrusted; and (3) circumstances indicating fraud." *In re*
6       *Hoffman*, 70 Bankr. 155, 162 (Bankr. W.D. Ark. 1986);  *In re Schultz*, 46 Bankr.
        880, 889 (Bankr. D. Nev. 1985).

7   *Littleton v. Transamerica Com. Fin*, 942 F.2d at 555.

8       As discussed in COLLIER ON BANKRUPTCY, a nondischargeable larceny is the wrongful

9   taking of the property of another with the intent to convert the property to the taker's use without

10  the consent of the owner of the property.   4 COLLIER ON BANKRUPTCY (SIXTEENTH EDITION)

11  P 523.10[2]. The main difference between a larceny and an embezzlement is that the initial taking

12  is wrongful for the larceny, while with the embezzlement the taker does not improperly obtain

13  possession, but the wrongful act subsequently occurs.  *Id.*  As stated by the Ninth Circuit Court of

14  Appeals in *Ormsby v. First America Title Company (In re Ormsby)*, 591 F.3d 1199 (9th Cir. 2010),

15  a court is not bound by state law on what constitutes larceny, but *may* follow state law.

16
17      Section 523(a)(4) prevents discharge "for fraud or defalcation while acting in a
        fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "For purposes
18      of section 523(a)(4), a bankruptcy court is not bound by the state law definition of
        larceny but, rather, may follow federal common law, which defines larceny as a
19      'felonious taking of another's personal property with intent  to convert it or deprive
        the owner of the same.' " 4 Collier on Bankruptcy P 523.10[2] (15th ed. rev. 2008).

20  *Id.* at 1205.  The Ninth Circuit then stated that it was not determining that there is a "fraudulent

21  intent" requirement for a larceny to be nondischargeable, which is what the debtor in that case was

22  arguing.  The Ninth Circuit concluded:

23
24      We make no determination concerning whether federal law requires a finding of
        fraudulent intent for larceny as Ormsby contends. Were we to find that larceny
25      required fraudulent intent, the state court judgment would provide enough
        information to determine that the court found that his actions amounted to fraud,
26      because "[i]ntent may properly be inferred from the totality of the circumstances and
        the conduct of the person accused.*" Kaye v. Rose (In re Rose)*, 934 F.2d 901, 904
27      (7th Cir. 1991). The totality of the circumstances as described in the state court's
        findings of fact make clear that Ormsby acted with fraudulent intent. . . .

28  *Id.*

Under California Law, the crime of theft (larceny renamed theft in 1927; RUTTER GROUP-CALIFORNIA CRIMINAL LAW, § 8:1.LARCENY) occurs as defined in California Penal Code § 484 (emphasis added) when a person:

> [w]ho shall feloniously **steal, take, carry, lead, or drive away** the personal property of another, or who shall **fraudulently appropriate property which has been entrusted** to him or her, or who shall **knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money**, labor **or real or personal property**, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, **is guilty of theft**.

The elements of theft (larceny) are stated in the RUTTER GROUP-CALIFORNIA CRIMINAL LAW treatise as follows:

§ 8:2. Larceny—Essential elements of larceny

There are four essential elements of the crime of larceny:

1. A taking;

2. Of the personal property of another;

3. Asportation of the property taken; and

4. The taking was done, without claim of right, to deprive the owner of his or her property permanently.[1]

The offense of theft by larceny is committed by a person who: (1) takes possession; (2) of personal property; (3) owned or possessed by another; (4) by means of trespass; (5) with intent to steal the property; and (6) carries the property away.[2]  A leasehold interest is property subject to the theft statute.[3]  The act of taking personal property from another's possession is always a trespass unless the owner consents to the taking freely and unconditionally or the taker has a legal right to take the property.[4]

Consent procured by fraud is invalid, and the resulting offense is commonly called larceny by trick and device.[5]  The intent to steal is the intent, without a good faith claim of right, to permanently deprive the owner of possession. If the taking has begun, the slightest movement of the property constitutes a carrying away or asportation.[6]

The jury instruction for theft by larceny lists three elements: (1) a person took personal property of some value belonging to another; (2) when the person took the property he or she had the specific intent to deprive the other person permanently of the property; (3) the person carried the property away by obtaining physical possession and control for some period of time and by some movement of the property.[7]  These elements are further discussed in §§ 8:3 to 8:11, below.

1  RUTTER GROUP-CALIFORNIA CRIMINAL LAW § 8.2 (footnote citations to California case law
2  omitted).

3      Only personal property can be the subject of theft (larceny). *Id.*, § 8:5. The mere fact that
4  someone is a co-owner or partner with the victim does not mean that the improper taking is not a
5  theft (larceny). *Id.*, § 8:8.

6      The Complaint references that in addition to embezzlement or larceny, Defendant-Debtor
7  breached her fiduciary duty in converting Plaintiff's property. Complaint ¶ 30, Dckt. 1. In the
8  Second Cause of Action, the alleged breach of fiduciary duty is tied to the claim of fraud and
9  embezzlement. *Id.*, ¶ 40-42.

10     As discussed by the Ninth Circuit Court of Appeals in *Blyler v. Hemmeter* (*In re Hemmeter*),
11 242 F.3d 1186, 1189- 1190 (9th Cir. 2001), whether a fiduciary duty is owed is a question of federal
12 law:

13
14     Whether a person is a fiduciary under §523(a)(4) is a question of federal law. *Lewis
       v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996) (citing *Ragsdale v. Haller
15     (In re Haller)*, 780 F.2d 794, 795 (9th Cir. 1986)). The origins of the fiduciary
       capacity discharge exception date to the Bankruptcy Act of 1841. 5 Stat 440. From
16     1884 to the present, courts have construed "fiduciary" in the bankruptcy discharge
       context as including express trusts, but excluding trusts *ex maleficio*, i.e., trusts that
       arose by operation of law upon a wrongful act. *Davis v. Aetna Corp.*, 293 U.S. 328,
17     333, 79 L. Ed. 393, 55 S. Ct. 151 (1934); *Chapman v. Forsyth*, 43 U.S. 202, 2 HOW
       202, 208, 11 L. Ed. 236 (1844). We have adhered to this construction in interpreting
18     the scope of 11 U.S.C. §523(a)(4), refusing to deny discharge to those whose
       fiduciary duties were established by constructive, resulting and implied trusts.
19     *Runnion v. Pedrazzini (In re Padrazzini)*, 644 F.2d 756, 758 (9th Cir. 1981); *Schlecht
       v. Thornton (In re Thornton)*, 544 F.2d 1005, 1007 (9th Cir. 1976)." The core
20     requirements are that the relationship exhibit characteristics of the traditional trust
       relationship, and that the fiduciary duties be created before the act of wrongdoing
21     and not as a result of the act of wrongdoing." *Runnion*, 644 F.2d at 758. Fiduciary
       relationships imposed by statute may cause the debtor to be considered a fiduciary
22     under §523(a)(4). *Quaif v. Johnson*, 4 F.3d 950, 953-54 (11th Cir. 1993); *Runnion*,
       644 F.2d at 758 n. 2. In general, a statutory fiduciary is considered a fiduciary for the
23     purposes of §523(a)(4) if the statute: (1) defines the trust *res*; (2) identifies the
       fiduciary's fund management duties; and (3) imposes obligations on the fiduciary
24     prior to the alleged wrongdoing. *Cf. Windsor v. Librandi*, 183 B.R. 379, 383 (M. D.
       Pa. 1995) (discussing whether a fiduciary under state securities act qualifies as a
25     fiduciary under §523). *See also Runnion*, 644 F.2d at 759. . . .

26     As addressed by the Supreme Court in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267
27 (2013), that defalcation in a fiduciary capacity requires that the debtor have had a "culpable state
28 of mind," and there is not merely automatic liability for any loss when a fiduciary relationship exists.

When there is not bad faith, moral turpitude, or other immoral conduct, there must be intentional conduct which the debtor knows to be wrong, or the conscious disregard to a substantial and unjustified risk that the fiduciary's conduct will violate that person's fiduciary duty. *Bullock v. BankChampaign, N.A.*, 569 U.S. at 274. As determined in great detail in the Final Decision (which incorporates the Interlocutory Decision), the State Court Judge addressed the fiduciary relationship that was created between the Defendant-Debtor and Plaintiff, that Defendant-Debtor was conscious of Plaintiff's interests in the Escalon Property, that Defendant-Debtor made express representations how she would protect Plaintiff's interests in the Escalon Property and the proceeds thereof, how Defendant-Debtor violated both Plaintiff's known rights, and  acted contrary to the express representations made as to how Defendant-Debtor would act (consistent with her fiduciary duties) to protect Plaintiff's interest in the Escalon Property and the proceeds from the sale of the Escalon Property.

**Debt for Willful and Malicious Injury**
**Pursuant to 11 U.S.C. § 523(a)(6)**

It is well established that in order for a claim to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6) both willful and malicious injury must be established. *Ormsby v. First Am. Title Co. (In re Ormsby),* 591 F.3d 1199, 1206 (9th Cir. 2010). The willful injury standard in this Circuit is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su* (*In re Su*), 290 F.3d 1140, 1142 (9th Cir. 2002). Whereas the malicious injury standard is satisfied by demonstrating that the injury "involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1209 (9th Cir. 2001) (internal citations omitted).

For a determination that an obligation is nondischargeable pursuant to 11 U.S.C. § 523(a) the Plaintiff must establish the elements by the "ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. at  291.  This is the same as for the State Court Action.

Injuries covered by the section 523(a)(6) discharge exceptions are not confined to physical damage or destruction; an injury to intangible personal or property rights is sufficient. *In re Rushing*,

161 B.R. 984 (Bankr. E.D. Ark. 1993). Thus, the conversion of another's property without the owner's knowledge or consent, done intentionally and without justification and excuse, is a willful and malicious injury within the meaning of the exception. *In re Lampi*, 152 B.R. 543 (C.D. Ill. 1993); *Security Bank of Nevada v. Singleton*, 10 C.B.C.2d 429, 37 B.R. 787 (Bankr. D. Nev. 1984); *Bombadier Corp. v. Penning (In re Penning)*, 22 B.R. 616 (Bankr. E.D. Mich. 1982).

In *Lockerby v. Sierra*, 535 F.3d 1038, 1041-1042 (9th Cir. 2008), the Ninth Circuit Court of Appeals stated that the court looks to applicable state law in defining what is a "conversion." The elements for a conversion under California law are stated as:

> (2) Elements. The basic elements of the tort of conversion are (a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages. (*Fremont Indem. Co. v. Fremont General Corp.* (2007) 148 C.A.4th 97, 119, 55 C.R.3d 621, *infra*, § 814.) The property need not be appropriated to the use of the defendant; it may be destroyed, or merely damaged. (*Staley v. McClurken* (1939) 35 C.A.2d 622, 628, 96 P.2d 805; *see Hernandez v. Lopez* (2009) 180 C.A.4th 932, 939, 103 C.R.3d 376 [cause of action labeled "intentional tort" stated claim for conversion; business owners alleged that prospective buyers sold business that did not belong to them to third party]; Rest.2d, Torts §§ 223, 226; on destruction or alteration, see infra, § 823.)

5 WITKIN SUMMARY OF CALIFORNIA LAW, TORTS § 801(a)(2).

**Fees Ancillary to the Primary Debt**
**as Nondischargeable**

Debts for attorneys' fees or other expenses ancillary to and incurred in connection with enforcing the primary nondischargeable obligation are themselves nondischargeable. As stated by the Supreme Court in *Cohen v. De La Cru*, 523 U.S. 213, 218, 223 (1998) (nondischarged debt included not only the damages for the actual "harm" done, but included the treble damages awarded under applicable law and attorneys' fees):

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor. Under New Jersey law, the debt for fraudulently obtaining $31,382.50 in rent payments includes treble damages and attorney's fees and costs, and consequently, petitioner's entire debt of $94,147.50 (plus attorney's fees and costs) is nondischargeable in bankruptcy. Accordingly, we affirm the judgment of the Court of Appeals.

*See also Kingsman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987); *Stokes v. Vierra*, 185 B.R. 341, FN. 5, (DC ND Cal 1995); and *Florida v. Ticor Title Ins. Co. (In re Florida)*, 164 B.R. 636, 639 (B.A.P. 9th Cir. 1994).

### GRANTING OF MOTION AND ORDER FOR ENTRY OF JUDGMENT THAT THE STATE COURT JUDGMENT, THE INTERLOCUTORY JUDGMENT AND ORDER TO PAY PROPERTY TAXES, AND THE 2033.420 ORDER OBLIGATIONS ARE NONDISCHARGEABLE

The Final Decision (that incorporates the Interlocutory Decision) clearly determines that Defendant-Debtor's conduct concerning the Plaintiff's property consisting of the Escalon Property, the proceeds from the sale of the Escalon Property, and the Ripon Property purchased with Plaintiff's proceeds from the sale of the Escalon Property is conduct that renders the State Court Judgment, Interlocutory Judgment and Order to Pay Taxes, and 2033.420 Order obligations nondischargeable. Defendant-Debtor's conduct was a breach of her fiduciary duties to Plaintiff. These were not "merely" a "technical" fiduciary duty arising under an obscure statute or principle of common law. Defendant-Debtor was well aware of Plaintiff's 80.02% interest in the Escalon Property, acknowledged that interest to Plaintiff, and affirmatively represented to Plaintiff that she would respect and protect that interest while she held title to the Escalon Property.

In addition to subsequently secretly selling the Escalon Property and diverting Plaintiff's sales proceeds to her own economic benefit (buying the Ripon Property and claiming she was the sole owner of it), Defendant-Debtor did this in active concert with the Beaches and her parents, the Bellinoes. The Defendant-Debtor and the Bellinoes acted in active concert to have title transferred into her name while paying substantially less than what was the then fair market value of the Escalon Property if Defendant-Debtor was purchasing 100% of the Property from the Beaches (who were holding title to the Escalon Property for Plaintiff and who were determined by the State Court Judge to have breached their independent fiduciary duty to Plaintiff). Defendant-Debtor knowingly violated the express statements to Plaintiff that she would hold title to the Escalon Property for his benefit as to his 80.02% interest in that Property and that she would pay to him the portion of the sale proceeds for his interest in the Escalon Property.

The present Adversary Proceeding seeks a determination that the obligations owing on the

State Court Judgment, Interlocutory Judgment and Order, and the 2033.420 Order are nondischargeable based on Defendant-Debtor having committed embezzlement or larceny of Plaintiff's proceeds from the sale of the Escalon Property. Motion, ¶ 9, Dckt. 30. The State Court findings and conclusions include Defendant-Debtor making Plaintiff aware that she was marketing the Escalon Property for sale. Plaintiff allowed Defendant-Debtor to proceed with a sale of the Escalon Property based on Defendant-Debtor's express representation that when the proceeds from the sale were received, she would have Plaintiff's portion of the proceeds paid to him. Plaintiff allowed Defendant-Debtor to obtain possession of the monies. Defendant-Debtor then appropriated those monies to her own use, not the payment to Plaintiff as had been entrusted to her. The State Court Judge clearly found this was part of the fraudulent scheme that Defendant-Debtor was knowingly and intentionally committing. The State Court Judgment, Interlocutory Judgment and Order to Pay Taxes, and 2033.420 Order obligations are nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as having arisen from and ancillary to Defendant-Debtor committing embezzlement of Plaintiff's proceeds from the sale of the Escalon Property.

Defendant-Debtor might argue that "no, I could not commit embezzlement because I hid from Plaintiff the actual sale of the Escalon Property and he could not have 'entrusted' such 'hidden monies' to me (Defendant-Debtor)." Pursuing such argument establishes the basis for determining that the State Court Judgment, Interlocutory Judgment and Order to Pay Taxes, and 2033.420 Order obligations are nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as having arisen from and ancillary to Defendant-Debtor committing larceny. Defendant-Debtor, by her fraud and misrepresentation obtained possession of Plaintiff's 80.02% portion of the proceeds from the sale of the Escalon Property without his consent or authorization, and then, with the intention of stealing the Plaintiff's portion of the proceeds for her own benefit, carried away the Plaintiff's portion of the proceeds and used them to purchase the Ripon Property which Defendant-Debtor claimed to own and in which asserted Plaintiff had no interest.

The State Court Judge clearly found this was part of the fraudulent scheme that Defendant-Debtor was knowingly and intentionally committing. The State Court Judgment, Interlocutory Judgment and Order to Pay Taxes, and 2033.420 Order obligations are nondischargeable pursuant

1   to 11 U.S.C. § 523(a)(4) as having arisen from and ancillary to Defendant-Debtor committing

2   larceny of Plaintiff-Debtor's proceeds from the sale of the Escalon Property.

3          The Motion for Summary Judgment also seeks a determination that the State Court

4   Judgment, Interlocutory Judgment and Order to Pay Taxes, and 2033.420 Order obligations are

5   nondischarageable pursuant to 11 U.S.C. § 523(a)(2)(A) based upon fraud committed by Defendant-

6   Debtor.

7          The State Court findings and conclusions find fraud having been committed by Defendant-

8   Debtor under several different grounds.  First, there were transfers made by Defendant-Debtor done

9   with the express intent to hinder, delay, and defraud Plaintiff from obtaining his portion of the sales

10  proceeds.  These were the $150,000.00 in proceeds Defendant-Debtor transferred to her parents.

11  The State Court Judge  determined that $34,978.16 of this was a fraudulent conveyance of Plaintiff-

12  Debtor's proceeds from the sale, with $114,021.84 being the total amount of Defendant-Debtor's

13  portion of the proceeds from the sale for her interest in the Escalon Property.

14         The State Court Judge determined that Defendant-Debtor engaged in a series of intentional

15  fraudulent statements purporting to acknowledge Plaintiff's 80.02% interest in the Escalon Property,

16  that Defendant-Debtor held title to the Escalon Property subject to Plaintiff's interests, that

17  Defendant-Debtor would protect Plaintiff's interests, and that Defendant-Debtor would pay Plaintiff

18  all of the proceeds relating to Plaintiff's interests from a sale of the Escalon Property to Plaintiff.

19  The findings and conclusions in the Final Decision establish that Defendant-Debtor: (1) made the

20  representations; (2) knew they were false at the time they were made; (3) made them with the

21  intention and purpose of deceiving Plaintiff; (4) Plaintiff justifiably relied on such representations;

22  and (5) Plaintiff sustained the damage represented by the State Court Judgment, Interlocutory

23  Judgment and Order to Pay Taxes, and 2033.420 Order obligations as the proximate result of the

24  misrepresentations made by Defendant-Debtor.  The State Court findings and conclusions establish

25  a complex fraudulent scheme conducted by the Defendant-Debtor, with the assistance and

26  cooperation of the other State Court defendants, to defraud Plaintiff of his proceeds from the sale

27  of his interest in the Escalon Property.  There was not merely an isolated misrepresentation, but a

28  web of false promises and misrepresentations that Plaintiff justifiably relied upon to lull Plaintiff

1    into a position where his proceeds from the sale of the Escalon Property could then be diverted by

2    Defendant-Debtor to her personal financial advantage.

3        The misrepresentations include those of omission. Defendant-Debtor purported to openly

4    work with Plaintiff for the sale of the Escalon Property, advising him of the listing and marketing

5    of the Property. She then removed the Escalon Property from the market, representing to Plaintiff

6    that Defendant-Debtor would obtain a loan to pay Plaintiff for his interest in the Escalon Property.

7    With that misrepresentation having been made, Defendant-Debtor then secretly listed the Escalon

8    Property for sale, secretly entered into a contract to sell the Escalon Property, secretly closed the sale

9    of the Escalon Property, and then secretly diverting Plaintiff's proceeds from the sale of the Escalon

10   Property to her own benefit to purchase the Ripon Property in when Defendant-Debtor asserted that

11   Plaintiff had no interest. Though promising to keep Plaintiff advised of any sale and then that she

12   would pay him for his interest from a loan she was going to obtain to keep Plaintiff lulled into

13   believing that Defendant-Debtor was acting to protect his interests in the Escalon Property as she

14   represented, Defendant-Debtor omitted disclosing that she had re-listed the Escalon Property, that

15   Defendant-Debtor entered into a contract to sell the Escalon Property, that escrow closed for sale

16   of the Escalon Property, or that Defendant-Debtor had taken Plaintiff's portion of the proceeds from

17   the sale of the Escalon Property (that she promised to pay to Plaintiff) to purchase the Ripon

18   Property.

19        The State Court Judgment, Interlocutory Judgment and Order to Pay Taxes, and 2033.420

20   Order obligations are nondischargeable pursuant to 11 U.S.C. § 523(a)(2) as having arisen from and

21   ancillary to Defendant-Debtor committing fraud.

22        Further, the State Court Judgment, Interlocutory Judgment and Order to Pay Taxes, and

23   2033.420 Order obligations, and each of them, are nondischargeable pursuant to 11 U.S.C.

24   § 523(a)(6) as the damages for and ancillary to Defendant-Debtor's willful and malicious injury to

25   Plaintiff's property. The Findings and Conclusions made in the State Court Action establish that

26   Defendant-Debtor's conduct was: (1) a wrongful act, (2) done intentionally, (3) which necessarily

27   causes injury, and (4) is done without just cause or excuse.

28        The Findings and Conclusions of the State Court include Defendant-Debtor intentionally and

1   willfully  taking the proceeds from the sale of Plaintiff's interest in the Escalon Property.

2   Defendant-Debtor had actual knowledge of Plaintiff's 80.02% interest in the Escalon Property,

3   acknowledged such interest to Plaintiff, and intentionally misrepresented that she would pay Plaintiff

4   the portion of the sales proceeds that was for his interest in the Escalon Property. Defendant-Debtor,

5   without just cause or excuse, secretly sold the Escalon Property and then took Plaintiff's proceeds

6   from the sale of the Escalon Property for her own benefit and used them to purchase the Ripon

7   Property in which she asserted Plaintiff had no interest. She did this in breach of her fiduciary duty

8   to Plaintiff and contrary to the express representations by Defendant-Debtor that the proceeds from

9   the sale of the Escalon Property for Plaintiff's interests there would be paid to Plaintiff.

10         The Findings and Conclusions of the State Court include that Defendant-Debtor conspired

11  to and did convert Plaintiff's property - the proceeds from the sale of his 80.02%  interest in the

12  Escalon Property.  Under California law, the Plaintiff's proceeds from the sale of the Escalon

13  Property were converted by the Defendant-Debtor, and her obligation under the State Court

14  Judgment for such conversion is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

15
    **Amount of Nondischargeable Obligation for**
16  **Interlocutory Judgment and Order to Pay Taxes**

17         Plaintiff asserts that the Interlocutory Judgment and Order to Pay Taxes requires the

18  Defendant-Debtor to pay $7,991.70 for property taxes for the 2014, 2015, and 2016 tax years that

19  Defendant-Debtor was occupying the Escalon Property.  Proof of Claim No. 2-1; Exhibit 1,

20  Dckt. 34. In the Interlocutory Judgment and Order the State Court Judge ordered (emphasis added):

21         13. The Court further orders as follows, which orders shall take effect immediately
           upon entry of this judgment and without awaiting entry of final judgment:
22
               a.    Ms. Solario [Defendant-Debtor] is ordered to deliver exclusive
23         possession of the Ripon Property to Mr. De Jong [Plaintiff]  within thirty (30) days
           of service of notice of entry of this judgment. Mr. De Jong may enforce this
24         interlocutory judgment and order in the manner of a judgment for possession of real
           property under the Enforcement of Judgements Law, and a writ of possession may
25         be issued and served without further order of this Court at any time that is more than
           thirty (30) days after entry of this judgment.
26
               b.    **Until exclusive possession of the Ripon Property is delivered to**
27         **Mr. De Jong pursuant to this judgment, Ms. Solario is ordered** to preserve and
           protect the Ripon Property; **to pay all property taxes upon the Ripon Property**
28         **when due**; to obtain and maintain in force casualty insurance naming Mr. De Jong

                                          25

as insured or as an additional insured in an amount not less than the replacement value of the Ripon Property; to obtain and maintain in force liability insurance naming Mr. De Jong as insured or as an additional insured in an amount not less than $500,000.00; and to make such other maintenance and pay such other expenses as may be reasonably necessary to preserve the property.

From the language used by the State Court Judge in the Interlocutory Judgment and Order to Pay Taxes, it is not clear whether that judge ordered the payment of all taxes since the June 2014 purchase of it by Defendant-Debtor using Plaintiff's proceeds of sale or the property taxes that came due from and after the order to turn over possession of the Ripon Property to Plaintiff.

In the Motion for Summary Judgment, Plaintiff states that relief determining that the $7,991.70 in property taxes is nondischargeable, stating:

> 7. Additionally, **because Ms. Solario [Defendant-Debtor] failed to pay property taxes on the property** that **she had acquired with money she stole from Mr. De Jong [Plaintiff] in violation of the state court's order**, Mr. De Jong has additionally asserted a claim for those unpaid taxes in the amount of $7,991.70 as of the date of the Debtor's petition.
> . . .
> 12. **Because the** award of expenses of making proof under Code of Civil Procedure section 2033.420 and the **order directing Ms. Solario to pay property taxes on the Ripon Property are ancillary to the primary nondischargeable debts in this action, they are consequently nondischargeable themselves.** *See In re Eisenberg*, 189 B.R. 725, 732 (E.D. Wis. Bk. 1995) (holding that attorney's fees incurred in connection with attempt to collect nondischargeable debt were ancillary to the primary debt and thus nondischargeable); *see also In re Kennedy*, 243 B.R. 1, 13 (W.D. Ken. Bk. 1997).

Motion ¶¶ 7, 12, Dckt. 30 (emphasis added).

The language used in the Interlocutory Judgment and Order is not clear whether it orders the payment of prior year property taxes or just taxes from and after the date of the Order. This court will not relitigate what has already been determined by the State Court Judge. Whether it is only for the property taxes after the date of the Interlocutory Judgment and Order or requires Defendant-Debtor to pay the property taxes dating back to 2014 when Defendant-Debtor used Plaintiff's proceeds from the sale of the Escalon Property, that obligation is nondischarageable as part of the damages flowing from Defendant-Debtor's fraud/embezzlement/larceny/willful and malicious conduct causing damage to Plaintiff and the property of Plaintiff.

The obligations for the payment of taxes pursuant to the Interlocutory Judgment and Order are nondischarageable, in such amount as have determined by the State Court Judge, which may be

1    clarified and expressly stated in further proceedings in the State Court Action.

2          The Findings and Conclusions that were actually and necessarily made in granting Plaintiff

3    the State Court Judgment establish that the State Court Judgment, the 2033.420 Order, and the

4    Interlocutory Judgment and Order to Pay Taxes are each nondischargeable pursuant to 11 U.S.C.

5    § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6), as separate and independent bases,

6    for determining each of these obligations are nondischargeable.

7          The court shall issue a separate order granting the Motion for Summary Judgment and for

8    entry of a judgment that Defendant-Debtor's obligations on the State Court Judgment, the 2033.420

9    Order, and the Interlocutory Judgment and Order to Pay Taxes, and each of them are

10   nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and § 523(a)(4).  This court

11   does not enter a separate monetary judgment, but a judgment determining that the State Court

12   Judgment, the 2033.420 Order, and the Interlocutory Judgment and Order to Pay Taxes, and each

13   of them, may be enforced as provided under California law, including all post-judgment interest,

14   fees, costs, and expenses that are recoverable pursuant thereto.

15   **Dated:** January 22, 2020                    **By the Court**

16

17

18   _____

19   **Ronald H. Sargis, Judge**
     **United States Bankruptcy Court**

20

21

22

23

24

25

26

27

28

# ADDENDUM A

### FINAL DECISION FINDINGS AND CONCLUSIONS

The State Court judge's Final Statement of Decision states the findings and conclusions concerning the award of punitive damages, and adopts and incorporates Interlocutory Decision findings and conclusions concerning the liability of Defendant Debtor.

**Final Decision Findings and Conclusions**
**For Punitive Damages Final Decision**
**Exhibit 3, Dckt. 34 at 17- 23**

The State Court findings and conclusions for the award of punitive damages in favor of Plaintiff and against Defendant-Debtor include:

A.    The court determined in the liability phase of the trial that Defendant-Debtor aided and abetted George Beach in breaching his fiduciary duties to Plaintiff concerning Plaintiff's interests in the Escalon Property.  Final Decision, p. 3:10-12; Dckt. 34 at 19.

B.    That Defendant-Debtor aided and abetted Susan Beach in breaching her fiduciary duties to Plaintiff concerning his interests in the Escalon Property.  *Id.*, 3:24-26.

C.    The State Court judge had found that Defendant-Debtor breached her fiduciary duties to Plaintiff; converted Plaintiff's property; fraudulently transferred Plaintiff's money (proceeds from the sale of the Escalon Property) to Mr. and Mrs. Bellino, Defendant-Debtor's parents; abetted Mr. and Mrs. Beach in breaching their fiduciary duties to Plaintiff; and conspired with and aided and abetted her parents in the conversion of Plaintiff's property and fraudulently transferred Plaintiff's proceeds of the Escalon Property sale to her parents. Final Decision, p.  *Id.*, 4:7-11.

D.    Further, that Defendant-Debtor repeatedly lied to Plaintiff about her plans to acquire title to and then sell the Escalon Property; concealed her acquisition of title to and subsequent sale of the Escalon Property; and that Defendant-Debtor deliberately sold and then kept Plaintiff's proceeds from the sale of the Escalon Property. *Id.*, 4:12-15.

E.    Further,

> She [Defendant-Debtor] was aware of Mr. De Jong's [Plaintiff] vulnerability and exploited it. Her conduct was deliberate and part of a course of conduct that took place over a long period of time. Considered as a whole, the Court finds that Ms. Solario's [Defendant-Debtor] conduct was highly reprehensible and warrants a high amount of punitive damages, subject to her ability to pay.

*Id.*, 4:15-19.

-1-

F.  In addressing the improper conduct of Judith Bellino (Defendant-Debtor's mother) in the conversion of Plaintiff's property (his interest in and the proceeds from the sale of the Escalon Property) in assisting Defendant-Debtor, the State Court judge stated:

> Mrs. Bellino was personally aware of Mr. De Jong's interest in the Escalon Property and his claim thereto, but she met in secret with the other defendants to plan and carry out the transfer of that property to her daughter, Kim Solario, which she and her husband facilitated by providing the money she used to purchase that property. She subsequently **assisted Ms. Solario in selling the property**, agreeing in advance **to receive money that belonged to Mr. De Jong from the sale of that property**, and **did so with knowledge** or, certainly, with reason to know **that Ms. Solario intended to keep the balance of the proceeds of the Escalon Property and not pay Mr. De Jong**. She was aware of Mr. De Jong's vulnerability and conspired with and aided and abetted Ms. Solario in exploiting it.

*Id.*, 5:14-22 (emphasis added).

G.  The court determined that $20,000.00 of punitive damages was properly awarded against Defendant-Debtor. *Id.* 5:28, 6:1-3.

H.  Significantly higher punitive damage amounts were awarded against the other State Court defendants in light of their significantly higher annual income and net worth – $464,000 annual income for one set of defendants and $11,000,000 net worth of the other set of defendants. *Id.*, 6:4-16.

**Interlocutory Findings and Conclusions**
**Adopted into Final Decision**
**Exhibit 1 to Final Decision, Dckt. 34 at 25-48**

The State Court judge's Interlocutory Decision findings and conclusions adopted as part of the Final Decision include: (identified by line and page number of the Interlocutory Decision, Dckt. 34 starting at 25):

A.  While in a relationship with Defendant-Debtor in 2008, Plaintiff moved into the Escalon Property, in which Defendant-Debtor was residing.  Interlocutory Decision, p. 2:21-24.

B.  Mrs. Bellino, Defendant-Debtor's mother, owned the Escalon Property and when Plaintiff learned of this potential opportunity, he entered into a contract to purchase the Escalon Property as a "short sale." *Id.*, 2:24-26.

C.  Plaintiff did not have sufficient funds to purchase the property but was later assisted by George and Susan Beach ("the Beaches") who agreed to contribute the remaining amount to purchase the property. Record title to the property was placed in the name of the Beaches as security for their contribution. *Id.*,  3:1-18.

D.      Plaintiff had entrusted his money to the Beaches to buy the property for him, and that they did in fact purchase the Escalon Property with that money and held it for Plaintiff's benefit. *Id.*, 3:26-27.

E.      In early 2011, Plaintiff and Defendant-Debtor ended their relationship, but Defendant-Debtor stayed at the residence until after the end of 2011 when the property would be sold. *Id.*, 4:9-10.

F.      After moving out, Plaintiff or his company continued to pay the property taxes on the Escalon Property, which amount totaled $23,019.29. *Id.*, 4:11-13.

G.      Even before Plaintiff had moved out of the Escalon Property, Defendant-Debtor secretly discussed with the other State Court Action defendants that the Escalon Property would be transferred to her. *Id.*, 4:16-17.

H.      Defendant-Debtor and the other State Court Action defendants Mr. And Mrs. Beach were aware of Plaintiff's interest in that Property, but nevertheless Defendant-Debtor and the Beaches conspired and did in secret to transfer the Escalon Property to Defendant-Debtor without Plaintiff's knowledge or consent. *Id.*, 4:16-28, 5:1.

I.      Defendant-Debtor was not a *bona fide* purchaser for value, took title with knowledge of Plaintiff's interest, and the amount paid to the Beaches for the transfer of title into her name did not remotely approach the fair market value of the Escalon Property. *Id.*, p. 5:1-5.

J.      After Plaintiff discovered the transfer, Defendant-Debtor acknowledged his interest in the property and agreed with him to sell the property and pay him that portion for his interest in the Escalon Property. Defendant-Debtor actively communicated with Plaintiff in her represented effort to sell the Escalon Property and pay Plaintiff for his interest in said Property. *Id.*, 5:5-25.

K.      Defendant-Debtor acknowledged to the real estate agent marketing the Escalon Property that Plaintiff's interest would be paid out of the sales proceeds. When Defendant-Debtor decided to take the Escalon Property off the market, she informed the real estate agent that rather than selling the Escalon Property, Defendant-Debtor was going to get a loan and pay Plaintiff for his interest from the loan. *Id.*, 5:25-27.

L.      On June 18, 2014, Defendant-Debtor entered into an agreement with a different realtor to sell the Escalon Property. On July 2, 2014, Defendant-Debtor entered into a contract to sell the Escalon Property. *Id.*, p. 6:13-17.

M.      Defendant-Debtor's intention in selling the Escalon Property was to use the proceeds to buy the Ripon Property, but did not notify Plaintiff of that intention, nor did she obtain his consent to sell Plaintiff's Escalon Property. *Id.*, 6:17-19.

N.      Though Plaintiff attempted to communicate with Defendant-Debtor, the Defendant-Debtor did not respond, did not notify Plaintiff of the pending sale, and did not notify Plaintiff that Defendant-Debtor intended to use the proceeds from the sale of the Escalon Property to buy the Ripon Property. *Id.*, 6:20-21, and 7:1-2.

O.      On July 28, 2014, Defendant-Debtor sold the Escalon Property and the next day used the proceed to purchase the Ripon Property, using only proceeds from the

1   sale of the Escalon Property to buy the Ripon Property.  Defendant-Debtor did not
    notify Plaintiff of the sale or the use of the sale proceeds to purchase the Ripon
2   Property and Plaintiff did not consent to the sale or the use of the proceeds.  *Id.*,
    7:3-10.
3

4   P.    Defendant-Debtor met with her parents, the Bellinoes prior to the sale of the
          Escalon Property and made an agreement with them to pay $150,000 of the sale
5         proceeds to them.  There was no identifiable obligation owed to the Bellinoes for
          the $150,000 paid to them.  Defendant-Debtor and the Bellinoes were aware of
6         Plaintiff's interest in the Escalon Property that was sold, they did not advise
          Plaintiff of the sale or the payment of moneys to Defendant-Debtor's parents, and
7         Plaintiff did not consent to such sale or payment of moneys to Defendant-
          Debtor's parents. *Id.*, 7:11-26.

8   Q.    When Plaintiff learned of the Escalon Property sale, he attempted to contact
          Defendant-Debtor.  She failed to respond.  The next day Plaintiff went to the
9         Escalon Property to confront the Defendant-Debtor, but she would not discuss the
          sale with Plaintiff.  *Id.*, 9:4-15.
10

11  R.    Defendant-Debtor then moved into the Ripon Property, purchased solely with
          proceeds from the sale of the Escalon Property.  When Plaintiff confronted the
12        Defendant-Debtor at the Ripon Property, Defendant-Debtor claimed that she was
          entitled to the equity in the Escalon Property.  *Id.*, p. 9:22-26.

13  S.    With respect to Defendant-Debtor beaching her fiduciary duty to Plaintiff, the
          State Court Judge's findings include:
14

15        1.    Plaintiff had an 80.02% equitable interest in the Escalon Property when he
                purchased it in August 2009.  *Id.*, p. 10:6-7.
16
          2.    Mr. and Mrs. Beach ("Beaches") held title to the Escalon Property after
17              the sale, which created a resulting trust for Plaintiff to the extent of his
                interest in the Escalon Property.  *Id.*, 10:7-10.
18
          3.    Beaches, as trustee, owed duties to the Plaintiff to hold the Escalon
19              Property for his benefit and to ultimately convey it to him. *Id.*, 10:11-12.

20        4.    Beaches breached their fiduciary duties, as trustees under the resulting
                trust, to Plaintiff by selling the Escalon Property to Defendant-Debtor in
21              April 2011.  *Id.*, 12-13.  The sales price was merely for the unsecured loan
                owed by Plaintiff to Beaches, a fraction of the fair market value, without
22              Plaintiff's consent or taking any action to protect his interest in the
                Escalon Property. *Id.*, 10:12-18.

23        5.    Defendant-Debtor acquired the Escalon Property with actual knowledge of
                Plaintiff's 80.02% interest in that property, and a resulting trust existed for
24              Plaintiff's benefit for which Defendant-Debtor was the trustee who owed
                fiduciary duties to Plaintiff.  *Id.*, 10:23-26.
25
          6.    Despite affirmatively representing to Plaintiff that Defendant-Debtor
26              would pay Plaintiff for his 80.02% interest from the sale of the Escalon
                Property, Defendant-Debtor breached that duty by secretly selling the
27              property and diverting the sales proceeds to herself or others, and away
                from Plaintiff.  *Id.*, 10:23-28, 11:1-3.
28

                                        -4-

7.  Defendant-Debtor conspired with the other State Court Action defendants to breach her fiduciary duties to Plaintiff, as well as the fiduciary duties of the other State Court Action defendants.  Further, that Defendant-Debtor intended, planned, and agreed to the sale of the Escalon Property to Defendant-Debtor for less than 22% of its fair market value.  *Id.*, 11:6-16.

8.  The above breach of fiduciary duties was made in secret, without informing or obtaining the consent of Plaintiff, with the full knowledge of Plaintiff's 80.02% interest in the Escalon Property, with the intent to hide the transfer of the Escalon Property to Defendant-Debtor. *Id.*, 11:15-21.

9.  That Defendant-Debtor knew and intended that the Beaches would breach their fiduciary duties to Plaintiff, Defendant-Debtor intended to facilitate that breach, and Defendant-Debtor gave substantial assistance to the Beaches in breaching their fiduciary duties to Plaintiff. *Id.*, 11:22,27.

This breach of the fiduciary duties by the Beaches, assisted by the Defendant-Debtor, was to transfer the Escalon Property to Defendant-Debtor, to Defendant-Debtor's financial benefit, for less than 22% of the fair market value of the Escalon Property in which Plaintiff held an 80.02% interest.

10. Defendant-Debtor, with her parents, the Bellinoes, intended, planned and agreed for Defendant-Debtor to sell the Escalon Property in secret, in breach of Defendant's fiduciary duties to Plaintiff, and to pay a portion of the sales proceeds to her parents. *Id.*, 12:2-4.

11. Defendant-Debtor and her parents hid the sale from Plaintiff, with full knowledge of his interest in the Escalon Property. *Id.*, 12:10-12.

12. The Bellinoes knew and intended for the Defendant-Debtor, their daughter, to breach her fiduciary duties to Plaintiff, and assisted Defendant-Debtor in breaching her fiduciary duties to Plaintiff. *Id.* 12:15-18.

13. Defendant-Debtor, knowing of Plaintiff's 80.02% interest in the Escalon Property, falsely signed an agreement stating she was the sole owner of Plaintiff's interest in said Property, knew that Plaintiff did not intend to convey his interest in the Escalon Property, and concealed the sale from him. *Id.*, 12:22-27.

T.  With respect to Defendant-Debtor being liable for punitive damages for the breach of her fiduciary duties to Plaintiff, the State Court judge found:

1.  Defendant-Debtor's direct breach of her fiduciary duties and aiding and abetting the other State Court Action defendants in breaching their respective fiduciary duties to Plaintiff form separate and independent bases for an award of punitive damages for Plaintiff and against Defendant-Debtor. *Id.*, 13:22,24.

2.  The State Court judge found by clear and convincing evidence that:

    a.  Defendant-Debtor's conduct was despicable. *Id.*, 13:24-25;

-5-

b.      Was carried on with willful and conscious disregard of Plaintiff's rights. *Id.*, 13:25-26;

c.      Defendant-Debtor was aware of such rights. *Id.*, 13:26-27;

d.      Defendant-Debtor's conduct was malicious within the meaning of California Civil Code § 3294(c)(1). *Id.*, 13:26-27; and

e.      Defendant-Debtor's conduct subjected Plaintiff to cruel and unjust hardship; which was done in conscious disregard of Plaintiff's rights, making it oppressive within the meaning of California Civil Code § 3294(c)(2). *Id.*, 13:27-28, 14:1-2.

U.      The State Court judge further concluded that Defendant-Debtor had converted property of the Plaintiff.

1.      Plaintiff, an 80.02% equitable interest owner of the Escalon Property, was entitled to 80.02% of the sales price immediately upon the sale of the Escalon Property in July 2014. *Id.*, p. 15:21-23.

2.      Despite having knowledge of Plaintiff's interest in the Escalon Property, Defendant Debtor intentionally retained and then converted Plaintiff's proceeds from the sale of the Escalon Property, using said proceeds to:

a.      Purchase the Ripon Property, and

b.      Paying $150,000.00 to the Bellinoes, her parents. *Id.*, 15:21-28.

3.      The State Court Judge further found, based on clear and convincing evidence;

a.      The conduct of Defendant-Debtor and her parents was despicable and carried on with willful and conscious disregard of the 80.02% interest of Plaintiff in the Escalon Property and his right to that portion of the sale proceeds. *Id.*, 16:27-28, 17:1-2;

b.      That such conduct was malicious within the meaning of California Civil Code § 3294(c)(1). *Id.*, 17:2-3;

c.      The conduct of Defendant-Debtor and her parents subjected Plaintiff to a cruel and unjust hardship in conscious disregard of this rights. *Id.*, 17:3-4;

d.      That such conduct was oppressive within the meaning of California Civil Code § 3294(c)(2). *Id.*, 17:4-5.

V.      The State Court Judge further found hat the secret transfer of $150,000 by Defendant-Debtor to the Bellinoes, her parents, was done with the intent to hinder, defraud, and delay payment of his portion of the proceeds from the sale of the Escalon Property, that it was done to preferentially pay the Bellinoes (who had no rights to such proceeds that were equal or superior to Plaintiff), and to put Plaintiff's portion of the sale proceeds beyond Plaintiff's reach. *Id.*; 17:10-25.

1.      The State Court Judge concluded that the transfer to the Bellinoes was

1   fraudulent as to the amount of $34,978.16, and should be avoided by that
2   amount, with interest, citing to California Civil Code § 3439.04. *Id.*, p.
    17:25-28, 18:1.

3       2.      The conduct of Defendant-Debtor and her parents to transfer Plaintiff's
4               portion of the proceeds from the sale of the Escalon Property was not only
                fraudulent, but malicious and oppressive within the meaning of California
5               Civil Code § 3294 sufficient to entitle Plaintiff to punitive damages
                against Defendant-Debtor. *Id.*, 18:13-19.

6   W.  The State Court judge further found that Defendant-Debtor was unjustly enriched
7       in the amount of $460,663.03, which represents Plaintiff's interest in the proceeds
        from the sale of the Escalon Property. *Id.*, 19:6-8.

8
9                  **AWARD OF DAMAGES PURSUANT TO**
        **CALIFORNIA CODE OF CIVIL PROCEDURE § 2033.420**

10          The Plaintiff also obtained the award of $189,523.50 in damages for the Defendant-

11  Debtor's wrongful failure to admit requests for admissions in the State Court Action.  The

12  damages are for the costs and expenses incurred by Plaintiff in having to prove the wrongful

13  denial or failure to admit by Defendant-Debtor.  The findings and conclusions are stated in the

14  State Court judge's Order ("2033.420 Order") in the State Court Action awarding the damages.

15  Attachment to Proof of Claim No. 4-1, filed as Exhibit 10, Dckt. 34.  The State Court judge's

16  findings and conclusions include:

17  A.  Plaintiff propounded requests for admissions on the Defendant-Debtor and the
        other State Court Action Defendants.  2033.420 Order ¶ 1, Dckt. 34.
18
19  B.  Defendant-Debtor failed to admit Requests for Admissions Nos. 2-5, 9-25, 28-30,
        35-36, and 41. *Id.*, ¶ 2.

20  C.  At the trial in the State Court Action, Plaintiff proved as true the matters that were
        the subject of the Request for Admissions. *Id.*, ¶ 7.
21
22  D.  The grounds for relief from the award of damages pursuant to California Code of
        Civil Procedure § 2033.420 do not exist.

23  E.  Plaintiff was awarded damages of $189,532.50 in attorneys' fees pursuant to
        California
24

25          A copy of the Request for Admissions and Defendant-Debtor's Response is filed as

26  Exhibit 11, Dckt. 34.  The Order does not identify which of the following denials were made

27  without any reasonable basis, but the express findings in the Final Decision include Defendant-

28  Debtor having actual knowledge of Plaintiff's interest in the Escalon Property, making promises

                                        -7-

to Plaintiff to place his name on title, and that Plaintiff would be paid his interest in the Escalon

Property from proceeds from the sale thereof.  The denials made by Defendant-Debtor which the

State Court judge determined that Defendant-Debtor no reasonable basis for not admitting the

fact include the following (identified by Request for Admission ("RFA") number):

RFA 2:      That Plaintiff contributed the majority of the purchase price for the
            Escalon Property.

RFA 3:      That Plaintiff contributed $340,500 of the purchase price of the Escalon
            Property.

RFA 4:      That Plaintiff contributed to the purchase price with the intent that
            Plaintiff would be an owner of the Escalon Property.

RFA 5:      That Plaintiff's contribution to the purchase price for the Escalon Property
            was not intended as a gift.

RFA 9-19:   That Plaintiff paid the property taxes for the Escalon Property for the
            years 2011 through 2013 (Defendant-Debtor denying because she did not
            recall such payments by Plaintiff).

RFA 20-21:  That Plaintiff paid to replace the heating and air conditioning unit for the
            Escalon Property (Defendant-Debtor denying because she did not recall
            such payment by Plaintiff).

RFA 22 :    That Defendant-Debtor purchased the Escalon Property from the Beaches
            in April 2011.

RFA 23:     That the amount Defendant-Debtor paid the Beaches for the Escalon
            Property was not the fair market value of the property at the time of
            Defendant-Debtor's purchase.

RFA 24:     That Defendant-Debtor purchased the Escalon Property for less than fair
            market value.

RFA 25:     That the amount Defendant-Debtor paid to purchase the Escalon Property
            was only the amount required to return to the Beaches their contribution,
            with interest, to the prior purchase of the Escalon Property.

RFA 28:     That Defendant-Debtor purchased the Escalon Property from the Beaches
            with knowledge that Plaintiff had contributed over $300,000 of the
            purchase price for the Escalon Property with the Beaches in 2009.

RFA 29:     That she purchased the Escalon Property from the Beaches in 2011 with
            knowledge that Plaintiff asserted an ownership interest in the Escalon
            Property.

RFA 30:     That Defendant-Debtor, after purchasing the Escalon Property from the
            Beaches, promised to place Plaintiff on title at any time on his request.

RFA 35:     That Defendant-Debtor sold the Escalon Property that Plaintiff had
            contributed more than $300,000 of the purchase price for that property

1    with the Beaches in 2009.

2    RFA  36:    That when Defendant-Debtor sold the Escalon Property she did so with
              the knowledge that Plaintiff asserted an ownership interest in the Escalon
3             Property.

4    RFA  41:    That Defendant-Debtor purchased the Ripon Property with the proceeds
              from the sale of the Escalon Property with the knowledge that Plaintiff
5             asserted an ownership interest in the proceeds from the sale of the Escalon
              Property.

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor / Defendant-Debtor** | **Attorney for the Debtor / Defendant-Debtor** (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Anthony D. Johnston, Esq.<br>1600 G Street, Ste. 103<br>Modesto, CA 95354 | Michael R. Tener, Esq.<br>P.O. Box 20<br>Stockton, CA 95201 |